UNITED STATES of America,
Plaintiff–Appellant,

v.

Charles V. LEAKE, Defendant–Appellee.

No. 92–6070.

United States Court of Appeals,
Sixth Circuit.

Argued March 25, 1993.

Decided July 12, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 28, 1993.

Joseph M. Whittle, U.S. Atty., Steven B. Pence, Asst. U.S. Atty., Office of the U.S. Atty., Louisville, KY, and Sean Connelly (argued and briefed), U.S. Dept. of Justice, Crim. Div., Washington, DC, for plaintiff-appellant.

Theodore H. Lavit (argued and briefed), Lavit & Abell, Lebanon, KY, for defendant-appellee.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

The government appeals from the district court's order suppressing evidence in this drug trafficking prosecution. The government raises two issues:

(1) Whether the district court erred in finding the state magistrate was not shown that there was probable cause to justify issuance of the search warrant; and

2) Whether, if the warrant was issued without probable cause, the executing officers nevertheless reasonably relied on the warrant in good faith.

Finding no error in the district court's disposition of these issues, we shall affirm.

## I.

Charles V. Leake was indicted on a multi-count, multi-defendant indictment. He and his codefendants were charged with possessing marijuana, with intent to distribute it, and with manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1). During a warrant-authorized search of Leake's home, over 300 pounds of marijuana were seized and Leake was placed under arrest. The events leading to the search and arrest are as follows:

Detective Thomas Murphy, a member of the Louisville Police Department Narcotics Division, received a telephone call from a citizen who told Murphy that he had observed a large stash of marijuana in the basement of a home where he had been engaged to work as a tradesman. The caller,

who would not give his name, told Murphy that the residence was located at 4825 Westport Road, Jefferson County, Kentucky.

The caller said he both smelled the distinctive odor of marijuana and saw what appeared to be bales of marijuana in the basement. He said he recognized the smell of marijuana because he had smoked marijuana when younger, but that he was now strongly "anti-drug," and that the people at the Westport Road residence appeared to be dealing, rather than possessing the drug for private use.

Murphy decided that the information provided by the caller would need to be corroborated before a search warrant could be obtained. He personally surveilled the Westport Road house for two hours on two successive evenings. The surveillance revealed nothing unusual. Detective Murphy confirmed the address of the house, observed that it matched the description given by the anonymous caller, and noted that the house had a basement as the caller had said. Murphy recorded the license numbers of the cars in the driveway and later determined that the automobiles were registered to Leake and Robin Grimes.

The following day, Murphy presented an affidavit for a search warrant to a Jefferson County Circuit Court judge. Detective Murphy's affidavit stated:

On the 12th day of April, 1988, at approximately 6:00 p.m., affiant received information from an anonymous person who phoned the narcotics office and stated that he was a tradesman who had been hired to do some work at 4825 Westport Rd. This person stated that it was necessary for him to enter the basement of 4825 Westport Rd., and upon entry smelled the very distinctive odor of marijuana, and observed what appeared to be marijuana stacked in the basement.

When questioned about his knowledge of the smell and appearance of marijuana this person stated that in his "younger days" he had been a user of marijuana, but now that he was older with children he is very anti-drug, and that he further felt that the people at 4825 Westport Rd. are involved with the dealing of marijuana as opposed

to someone who might have a small amount of marijuana for their own use, which this person seemed to find unacceptable. The above happened in Jefferson County, Ky.

Surveillance was initiated at the above address on the evenings of 04–13–88 and 04–14–88. No undue amount of traffic was observed going to this address. Two vehicles were found to be registered at 4825 Westport Rd., the first, a 1977 Pontiac, 2 dr., Ky. registration number XST–569, registered to Charles Vinson Leake, the second, a 1986 Toyota 3 dr., Ky. registration XST–568, registered to Robin McCoy Grimes.

The judge issued the warrant. Detective Murphy and other officers executed the warrant in the early morning hours of the next day. They recovered over 300 pounds of marijuana and other evidence, and arrested Leake and a number of other persons.

In the district court, Leake moved to suppress evidence of the marijuana, contending that it was seized under a warrant obtained without probable cause. The suppression motion was referred to a magistrate judge who conducted a hearing.

At the hearing, Leake argued that the warrant's supporting affidavit was insufficient to establish probable cause, but called no witnesses. Detective Murphy, testifying for the government, stated that he could not recall the exact details of his discussions with the state court judge that had occurred nearly four years earlier. Murphy testified that to the best of his recollection, the judge asked him several questions pertaining to the affidavit. Detective Murphy also testified that he remembered being struck by the tipster's sincerity, and that while the Narcotics Division frequently received anonymous calls from tipsters apparently motivated by spite or a grudge, this particular caller did not seem to have such motivations. This information was not set out in Murphy's supporting affidavit, however.

The state court judge who issued the warrant was out of the country at the time of the suppression hearing, so the government introduced an affidavit signed by him. In his

affidavit, the judge stated that he likewise could not recall the specific events surrounding his issuance of the Westport Road warrant, but that:

> In accordance with my normal procedures, I would have reviewed the Affidavit and questioned Detective Murphy to determine whether probable cause existed to issue the warrant. In this particular case involving an anonymous tip, I would have questioned Detective Murphy regarding the existence of any corroborating details to the information given in the anonymous tip. Although I do not recall this particular Search Warrant, in that I have reviewed hundreds of Search Warrants, many of which I refused to sign, I would have followed the above procedures.

> I therefore conclude that, after questioning Detective Murphy and reviewing the Application for the Search Warrant, I believed at the time that probable cause existed to issue the Search Warrant.

> I have no special relationship with Detective Murphy which would cause me to deviate from my normal procedures.

In his report, the United States magistrate judge recommended that the motion to suppress evidence of the seized marijuana be granted. He concluded that applying the "totality of the circumstances" test to the supporting affidavit, Detective Murphy had failed to demonstrate probable cause, and that the state judge had therefore erred in issuing the warrant. The magistrate judge likewise concluded that the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was inapplicable, because the supporting affidavit was "bare bones," under *Leon* and *United States v. Baxter*, 889 F.2d 731 (6th Cir.1989).

The district court agreed with the magistrate judge, and granted Leake's suppression motion, from which the United States now appeals.

## II.

### A.

The government contends that the district court erred in invalidating the search warrant. The government argues that Murphy's corroboration of the information given him by the anonymous caller was sufficient to establish probable cause because of the detail and internal consistency of the tip. Moreover, the fact that the information was supplied by a "citizen informant" made the corroboration requirement less stringent. Finally, the government urges us to accept the Eighth Circuit's reasoning in *United States v. Jackson*, 898 F.2d 79 (8th Cir.1990), in which a warrant issued on the basis of an anonymous call was upheld, despite a lack of thorough police corroboration. The government concedes the issue of probable cause in this case is close.

Leake, in contrast, argues that the district court correctly suppressed the evidence seized under the warrant. He contends that the state judge in this case merely ratified the bare conclusions of others and acted as a "rubber stamp." Leake maintains that the affidavit in this case did not establish the informant's basis of knowledge, general veracity, or the specific reliability of his information. He contends that Detective Murphy's limited surveillance failed to corroborate any vital information provided by the informant. Leake urges this court to apply the *Baxter* "bare bones" rule to this appeal.

### B.

 Although there has been some uncertainty on the question, *see, e.g., United States v. Sims*, 975 F.2d 1225, 1238 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993), and *cert. denied,* — U.S. —, 113 S.Ct. 1617, 123 L.Ed.2d 177 (1993), and *cert. denied,* — U.S. —, 113 S.Ct. 1620, 123 L.Ed.2d 179 (1993), we conclude that this court reviews a district court's decision on a motion to suppress evidence under two complementary standards. First, the district court's findings of fact are upheld unless clearly erroneous. *Cf. United States v. Duncan*, 918 F.2d 647, 650 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991). Second, the court's legal conclusion as to the existence of probable cause is reviewed de novo. *Id.* Where, as in this case, the district court is itself a reviewing court, we owe

its conclusions no particular deference. *United States v. Grandstaff,* 813 F.2d 1353, 1355 (9th Cir.), *cert. denied,* 484 U.S. 837, 108 S.Ct. 119, 98 L.Ed.2d 78 (1987). *Accord United States v. McKinney,* 758 F.2d 1036, 1042 (5th Cir.1985).

In reviewing a state magistrate's determination of probable cause, this court pays "great deference" to a magistrate's findings, which "should not be set aside unless arbitrarily exercised." *United States v. Pelham,* 801 F.2d 875, 877 (6th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987) (citing *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). As the Supreme Court has stated, a warrant must be upheld as long as the "magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing." *Id.* at 877–78 (citations omitted). Still, "[d]eference to the [issuing] magistrate ... is not boundless." *Leon,* 468 U.S. at 914, 104 S.Ct. at 3416.

### C.

In *Gates,* 462 U.S. 213, 103 S.Ct. 2317, the Supreme Court outlined the proper inquiry for determining probable cause where a partially corroborated anonymous informant's tip is at issue. The Court rejected previous, more rigid tests, in favor of the "totality of the circumstances" test. The Court stated that a warrant would be upheld if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

In *Gates,* state police officers received an anonymous handwritten letter which read as follows:

"[Y]ou have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys [sic] down and drives it back. Sue flys [sic] back after she drops the car off in Florida.

May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

. . . .

I guarantee if you watch them carefully you will make a big catch. They are friends with some big drugs [sic] dealers, who visit their house often."

*Id.* at 225, 103 S.Ct. at 2325. The police officers corroborated the tip by verifying the Gates' address. *Id.* at 226, 103 S.Ct. at 2325. Police officials also confirmed with an airline that "L. Gates" had a flight reservation to Florida at about the time referenced in the tipster's letter. *Id.* Finally, Drug Enforcement Administration agents in Florida verified almost all of the travel arrangements described by the tipster. *Id.*

The Supreme Court upheld the warrant, noting in particular the many parts of the tipster's information that were corroborated by the investigating officers. Moreover, the Court noted that the anonymous letter "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future action of third parties ordinarily not easily predicted." *Id.* at 245, 103 S.Ct. at 2335–36. The court's decision in *Gates* rested primarily upon the very specific details in the letter, and the subsequent thorough police confirmation of many of those details.

Search warrants have been upheld in cases involving less detailed anonymous tips and less thorough police corroboration. One such case, *United States v. Jackson,* 898 F.2d 79 (8th Cir.1990), is relied upon heavily by the government. In *Jackson,* an anonymous phone tip was made to a state police officer by the father of a drug user. The police officer's supporting affidavit read, in pertinent part:

On 01–12–89, I received a telephone call from a concerned citizen who wished to remain anonymous. This male caller stated that his daughter has been living for some time with Robert Jackson at the above location. He stated that he has

been aware for some time that his daughter has had a problem with drug addiction, by her own admission. The caller stated that on the morning of 01–12–89, his daughter called him while under the influence of some type of drug to such a degree that she was irrational, hysterical, and apparently disoriented and asked for help. The caller stated that he went to the above location and retrieved his daughter as well as her belongings. . . .

While at the above residence gathering his daughter's belongings, the caller stated that he inadvertently discovered that the garage was filled with plants approximately 4′ tall. The caller stated that he has very little knowledge of marijuana but said that his daughter told him these were marijuana plants. The caller also said that in the bedroom there were several sacks of dried green leafy material which his daughter also indicated was marijuana. The caller stated that he was relaying this information to this department in hopes that we could correct the situation existing at 1010 E. Evergreen. I checked with City Utilities and verified that Robert Jackson did, in fact, have service in his name at 1010 E. Evergreen. I drove by the above location and found it to be a white, single-story, single-family frame dwelling with a black roof [as the caller had described].

*Id.* at 80.

The Eighth Circuit upheld the warrant, finding that the information provided by the caller "ha[d] the richness and detail of a first hand observation." *Id.* at 81. The court also noted that the investigating officer verified the occupant's identity, the appearance of the house, and its address. Finally, the court noted that a second anonymous telephone tip was made in *Jackson,* where a second caller, who claimed to be a sister of the girl involved in the first tip, notified police that the occupant of the house was preparing to leave, and that they should thus act quickly. *Id.* at 80. This second tip, the court noted, served to corroborate the first. *Id.*

Another Eighth Circuit case, however, reached the opposite conclusion. In *United States v. Gibson,* 928 F.2d 250 (8th Cir.1991),

the court found probable cause lacking in a case of a partially verified anonymous telephone call. The *Gibson* informant notified a police officer

that he or she had been inside the house on that day and had seen about $30,000.00 in cash in several bank bags and three kilos of cocaine in and on a desk in the basement of the house. The caller had also learned that a new shipment of cocaine was expected within a few days. The caller also stated that there was a pitbull outside and a doberman inside the house, and described three vehicles, a 1979 or 1980 Yellow Chevrolet pick-up truck and two Ford Mustangs, one white and one gray, all owned by the residents.

*Id.* at 252.

The police officer conducted a brief investigation of the tip. He drove by the house in question, where he observed a white Ford Mustang, a pitbull in the back of the residence, and that the house had a basement. *Id.* Later, the officer checked utilities records and learned that the account at the house was registered to the defendant. *Id.* Finally, the officer checked with the state's revenue agency and verified that the occupant's general physical appearance matched the caller's description, and that he held title to a 1980 Ford and a 1979 Ford. All these details were noted in the supporting affidavit presented to the issuing magistrate.

The Eighth Circuit found an insufficient showing of probable cause in *Gibson.* While the court noted the detail of the information provided by the anonymous caller, it also focused on the fact that

only several innocent details had been corroborated by the police in driving by the address given and by making a few telephone calls. There was neither surveillance nor observation of unusual civilian or vehicular traffic at the address, nor were there very short visits characteristic of drug trafficking.

*Id.* at 253.

Finally, a case decided by this court is instructive. In *United States v. Smith,* 783 F.2d 648 (6th Cir.1986), we considered a warrant obtained through information provided

by a confidential informant whose information was partially verified by police officers. The supporting affidavit in *Smith* stated that:

> "On the 20th day of August, 1984, at approximately 5:00 p.m., the affiant received information from a reliable informant that Eric Helton was producing marijuana at his residence.
>
> Acting on the information received, affiant conducted the following independent investigation: On August 21, 1984 at 11:30 A.M. Detective William Stweart [sic] observed a marijuana plant growing beside the residence of Eric Helton."

*Id.* at 649.

Although the court stated that the tip standing alone would have been insufficient under *Gates*'s totality of the circumstances test, the panel upheld the warrant, based largely on the officers' own observation of marijuana growing at the site. Moreover, the informant in *Smith* was known, though confidential, and had provided reliable information in the past.

These cases suggest that the district court was correct in rejecting the warrant obtained by Detective Murphy. There are two principal problems with the warrant here.

First, the information provided by the anonymous caller in this case was not "rich" in relevant detail. It does not, in its quantity and quality, approach the detail provided in the affidavits in *Gates, Gibson,* and *Jackson.* The name of the residents of 4825 Westport Road were not provided. Indeed, no individual's names were ever mentioned, despite the fact that the caller was ostensibly hired by the residents to do work at the house. The caller did not provide the date or dates upon which the he saw the marijuana. Moreover, no planned future activity was described as in *Gates* and *Gibson* so that Detective Murphy could verify their occurrence. There was little in the affidavit that provided indicia of the caller's reliability.

Second, and equally important, Detective Murphy's corroboration of the information provided by the caller was simply insufficient. In both his supporting affidavit and at the subsequent suppression hearing in the district court, Murphy admitted noticing nothing out of the ordinary at the Westport Road residence. Although he noted the license plates on the cars and ultimately traced their registration, he had no information provided by the caller establishing the significance of the ownership and registration of the cars. He did verify that the residence had a basement but, standing alone, this was relatively unimportant. His investigation fell far short of the corroborations provided in *Gates* and *Smith.* In *Gates,* nearly every detail in the tipster's letter was confirmed. In *Smith,* officers noticed a large marijuana plant growing beside the house. Even in *Jackson,* a second phone tip was received and exigent circumstances arose, requiring quick police action.

The corroboration attempted in this case is closely analogous to the investigation performed in *Gibson,* where the Eighth Circuit found no probable cause. Indeed, in *Gibson,* the officer verified more facts than were verified here; the pit bull, the house, and the automobile all matched the tipster's description. Finally, the *Gibson* tipster provided the suspect's physical description and mentioned that his wife was also a dealer.

Ultimately, this case demonstrates the importance of taking sufficient time to verify an anonymous tip before a warrant is requested. Detective Murphy's investigation of the caller's information was inadequate. More police work was needed. The supporting affidavit was too vague and Detective Murphy's limited two-night surveillance was insufficient to verify important elements of the anonymous caller's information. We think the district court correctly rejected the warrant, and correctly found that there was no probable cause for its issuance.

### III.

### A.

■ The government next contends that even if the warrant was issued without a showing of probable cause, Detective Murphy relied on the warrant's validity in good faith, to the result that the so-called exception to the exclusionary rule announced in *Leon,* 468 U.S. 897, 104 S.Ct. 3405, should be applied.

The government argues that the affidavit here is much stronger than those determined to be conclusory in cases in which the *Leon* exception has been denied. Finally, the government contends that the district court's reliance on *Baxter* is misplaced, as that case is clearly distinguishable as involving affidavit deception. The more appropriate analogy, the government suggests, is the Eighth Circuit's *Gibson* decision where, despite finding a lack of probable cause for issuance of the warrant, the evidence was deemed admissible under *Leon*.

Leake argues that the district court's finding that *Leon* was inapplicable was correct. He maintains that this court's *United States v. Savoca*, 761 F.2d 292 (6th Cir.), *cert. denied*, 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126 (1985), decision mandates a rejection of the application of the *Leon* exception in this case. Leake contends this case is not proper for a *Leon* exception because the affidavit here was "bare bones."

**B.**

■■■ As with the first assignment of error, this issue is reviewed under a dual standard of review. We review the district court's factual findings for clear error. *Duncan*, 918 F.2d at 650. The district court's ultimate decision on whether to apply the *Leon* exception to the exclusionary rule is reviewed de novo. *Id.*

**C.**

In *Leon*, 468 U.S. 897, 104 S.Ct. 3405, the Supreme Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. at 3411.

The Court noted four specific situations where the good faith reliance exception would *not* apply: (1) where the supporting affidavit contained knowing or reckless falsity, *id.* at 914, 104 S.Ct. at 3416; (2) where the issuing magistrate failed to act in a neutral and detached fashion, and " 'serve[d] merely as a rubber stamp for the police,' " *id.* (citation omitted); (3) where the supporting

affidavit "d[id] not 'provide the magistrate with a substantial basis for determining the existence of probable cause,' " *id.* at 915, 104 S.Ct. at 3416 (citation omitted), or in other words, where "the warrant application was supported by [nothing] more than a 'bare bones' affidavit," *id.;* and (4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable, *id.* at 922, 104 S.Ct. at 3420.

Thus, in this case, we must first determine whether any of the disqualifying conditions precedent to application of the *Leon* rule obtain. First, it is clear that the affidavit contained no knowing or reckless falsities. Even Leake concedes that this bar to the *Leon* exception is not applicable.

Second, there is no credible evidence that the state judge who issued the warrant acted as a mere "rubber stamp." While Leake appears to argue otherwise, he offers no evidence suggesting that the judge did not exercise his discretion. There is simply no basis to conclude that the judge did not evaluate the information before him objectively.

The third obstacle to application of the *Leon* exception is not so easily dismissed. Whether the officer's affidavit was so inadequate as to preclude the issuing judge from making an objective determination of the existence of probable cause presents a close question. The federal magistrate and district court found that the affidavit was inadequate. We disagree.

The content of Detective Murphy's affidavit was far richer in detail than that provided in affidavits determined in other cases to be conclusory or "bare bones." *See, e.g., Leon*, 468 U.S. at 915, 926, 104 S.Ct. at 3416, 3422; *Aguilar v. Texas*, 378 U.S. 108, 109, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964); *Giordenello v. United States*, 357 U.S. 480, 481, 78 S.Ct. 1245, 1247, 2 L.Ed.2d 1503 (1958).

Leake's argument to the contrary, which relies on *Baxter*, 889 F.2d 731, is misguided. In *Baxter*, the police officer's affidavit "misrepresented the nature and character of the source of information to the issuing magistrate," *id.* at 733, by suggesting that the informant who had provided the tip was "reli-

able," even though the officer had never before worked with the informant and did not know if he was reliable. This misrepresentation in the *Baxter* affidavit made *Leon* inapplicable under one of *Leon*'s initial bars—knowing police misstatement in a supporting affidavit. There is no known misrepresentation in Detective Murphy's supporting affidavit.

Thus, none of the first three bars to the application of the *Leon* exception applies here. We find unpersuasive Leake's arguments to the contrary. We also disagree with the magistrate judge's and district court's finding that the affidavit here fails because it is "bare bones." The final inquiry, however, is whether Detective Murphy placed good faith, objectively reasonable reliance on the validity of the warrant. This final consideration is dispositive because we conclude that he did not.

The final bar to application of the *Leon* exception to this case requires a reviewing court to make two determinations. The first is whether Detective Murphy acted in good faith. The second is whether Detective Murphy's reliance on the validity of the warrant was objectively reasonable, that is, "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23.

This is the point at which the inadequacy of Detective Murphy's surveillance and corroboration of the informant's information affects application of the *Leon* exception. Despite knowing, as he testified, that he had to verify relevant information provided by the anonymous caller, or obtain independent evidence of wrongdoing, Murphy merely posted himself outside the house for only two hours on two nights, where he observed absolutely nothing out of the ordinary.

Murphy conceded in his affidavit that "[n]o undue amount of traffic was observed going to this address." At the suppression hearing he stated: "I saw no activity," and "[t]here was absolutely no movement seen at the house." He further conceded that he knew before he executed his affidavit that corroboration would be necessary, and that he did not know the date when the caller had observed the marijuana at the house. When asked on cross-examination how he verified the information given by the caller, given the limited surveillance, Detective Murphy admitted: "I took him on the sincerity of his statements to me." Moreover, neither in the affidavit nor during the suppression hearing did Detective Murphy allude to any concerns about time exigencies, as were present in *Jackson*.

A review of the suppression hearing transcript reveals a police officer who himself was very unsure about the adequacy of investigation he performed in the wake of the anonymous tip. The two-night, two-hour surveillance simply produced no significant corroboration of the informant's claim of marijuana trafficking. Judged on objective criteria, a reasonably well-trained officer "would have known that the search was illegal despite the magistrate's authorization." *Id.*

## IV.

In summary, we conclude that the warrant was issued without a showing of probable cause. The limited information provided by the anonymous caller, coupled with the brief limited surveillance by the affiant officer that turned up nothing unusual, was insufficient. Detective Murphy knew, or should have known, that reliance on the search warrant was ill-advised.

We disagree with the lower court's determination that the affidavit here was "bare bones," but conclude that Officer Murphy could not properly have placed objective good faith reliance on the warrant in light of his knowledge that corroboration was needed, and that none, of any significance, was obtained. It is well established that this court may affirm a district court holding for reasons other than those stated by the lower court. *See, e.g., Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir.1990).

## V.

For the foregoing reasons, we **AFFIRM** the district court's order.