21 F.3d 429
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 4UNITED STATES of America, Plaintiff-Appellee,
v.
Michael J. LASKA, Jr., Defendant-Appellant.
 No. 93-3495.
 United States Court of Appeals, Sixth Circuit.
 April 15, 1994.
 
 Before: MILBURN and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Michael J. Laska, Jr., entered a conditional guilty plea to two counts of illegal asbestos handling, in violation of 42 U.S.C. Sec. 7413(c)(1). Laska now appeals the district court's denial of both his motion to suppress evidence and his motion to dismiss the indictment under Fed.R.Crim.P. 48(b). Laska also argues that the district court improperly applied the Sentencing Guidelines in determining his sentence. We find all of his arguments to be meritless, and affirm.
 
 I.
 
 2
 In April 1991, FBI Agent Kevin Burnett applied for a warrant to search Laska's warehouse. Burnett set forth the following facts in his affidavit:
 
 
 3
 In February 1991, Agent Ed Fasco of the Cleveland Division of the Air Pollution Control Authority received an anonymous tip that Laska was illegally disposing of his warehouse's asbestos insulation. When Fasco inspected the building, he observed roughly 300 feet of recently stripped metal pipe and several open plastic garbage bags near one of the exits to the warehouse. Fasco took pictures of and samples from the material in these bags. Tests later indicated that this material was asbestos.
 
 
 4
 Fasco related these facts to EPA Agent Mike Patton in an early March 1991 phone conversation. Several days later, Patton and another EPA agent, Danny Campano, visited Laska's warehouse. They requested permission to inspect the building, but one of Laska's employees, Steven Howell, denied their request because Laska was not present. Before leaving the area, the agents spoke to an employee of the business located next to Laska's warehouse. This person reported that he had seen a woman, who was covered with a white substance, emerge from the warehouse and place a quantity of an unknown material into the dumpster behind the warehouse.
 
 
 5
 A few days later, Campano returned to the warehouse without Patton. This time Campano was met by Laska, who gave him permission to inspect the premises, so long as he was accompanied by Howell. In the course of his inspection, Campano observed asbestos-like material on the floor, in the dumpster behind the warehouse, and on some metal pipes that had been largely stripped of their insulation. Campano took photographs and samples of this material, which tests later indicated was asbestos. Before Campano left, Howell admitted to him that he had helped remove approximately 300 linear feet of asbestos insulation from the warehouse, and that this insulation had been thrown in the dumpster behind the warehouse.
 
 
 6
 In early April 1991, Burnett interviewed a confidential source, who was one of Laska's warehouse employees. The source told Burnett that, after the Fasco and Campano inspections, Laska told his employees to lie to the inspectors if they were questioned about their removal of asbestos from the warehouse. Laska, the source said, also instructed the employees not to wear protective respirators while working, unless they saw the inspectors coming. The source stated that Laska had directed them to remove the asbestos from the plastic bags the inspectors had sampled, and to replace the asbestos with other fibrous material that resembled asbestos. The source further stated that Laska pays a number of persons $5.00 per hour cash to help him dispose of asbestos at night. Laska and these persons, the source said, stuff the asbestos into plastic bags and then load the bags into Laska's red 1988 Ford one-half ton pickup truck. After the truck is loaded, Laska drives the truck away, but returns a short while later, without the bags.
 
 
 7
 The FBI commenced nighttime surveillance of Laska's warehouse several days after Burnett's interview with the confidential source. The night of April 8, 1991, FBI agents observed two persons place six plastic bags into a red Ford pickup truck, whose license plate indicated that the truck was registered to Laska. After the truck was loaded, a white male drove the vehicle to the rear of a nearby shopping center, where he threw the bags into a dumpster. The individual then drove the truck to Laska's home. Tests later indicated that the material in the bags was asbestos. The EPA agent who reported the test results advised Burnett that Laska's disposal of the asbestos was a clear violation of federal law.
 
 
 8
 A warrant to search Laska's warehouse was issued and executed after Burnett recited the above facts in his affidavit. A federal grand jury later returned a four-count indictment against Laska and Steven Howell. Count one charged Laska and Howell with conspiracy to remove asbestos illegally, in violation of 18 U.S.C. Sec. 371. Count two charged Laska and Howell with illegal asbestos handling and aiding and abetting, in violation of 42 U.S.C. Sec. 7413(c)(1) and 18 U.S.C. Sec. 2. Count three charged only Laska with illegal asbestos handling, in violation of 42 U.S.C. Sec. 7413(c)(1). Count four charged Laska with failure to notify the United States of his asbestos disposal, in violation of 42 U.S.C. Sec. 9603(b).
 
 
 9
 Laska filed pretrial motions to dismiss the indictment and to suppress the evidence gathered pursuant to the execution of the search warrant. In support of the motion to suppress, Laska maintained that the warrant was based upon information that was either obtained in violation of his Fourth Amendment rights or not credible. Laska asserted that Fasco's inspection of the warehouse was an unlawful search,[1] and that Campano unlawfully seized materials from the warehouse during his inspection of it. Laska charged that Burnett's confidential source was a "snitch[,] whose reliability was neither researched nor verified by" Burnett. (App. at 49.) Laska further maintained that the FBI's surveillance of him was merely a "ruse," whose object was to manufacture an "independent source" for information gathered in violation of Laska's Fourth Amendment rights.
 
 
 10
 The district court held a hearing on Laska's motions to dismiss and suppress. During the hearing, Laska refused to introduce evidence in support of his motion to suppress, but instead contended that the search warrant was facially invalid. The district court, however, concluded that the warrant was supported by probable cause even if the information gained by the Fasco search and Campano seizures was not considered. At the end of the hearing, the district court denied Laska's motions.
 
 
 11
 Laska thereafter entered into a plea agreement with the government. Pursuant to this agreement, the government filed a motion to dismiss counts one and four, which the district court granted; Laska entered a conditional plea of guilty to counts two and three, but reserved his right to appeal the district court's denial of his motions to suppress and dismiss. This appeal followed.
 
 II.
 
 12
 Laska first argues that the district court improperly denied his motion to suppress. In support of this argument, Laska seems to contend that the supposed illegality of Fasco's inspection and Campano's seizures tainted the rest of the information set forth in Burnett's affidavit. Laska also buttresses his argument by reiterating his assertions about the confidential source's reliability and the spuriousness of the FBI surveillance. In considering this argument, we review the district court's findings of fact for clear error, but review de novo the court's legal conclusion as to the existence of probable cause. United States v. Leake, 998 F.2d 1359, 1363 (6th Cir.1993).
 
 
 13
 The district court was correct to deny Laska's motion to suppress, without regard to whether Fasco's inspection and Campano's seizures violated the Fourth Amendment. In United States v. Leon, 468 U.S. 897, 926 (1984), the Supreme Court held that, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Here, we have no allegation that the magistrate abandoned his judicial role. Nor do we have any evidence that Burnett was dishonest or reckless in preparing his affidavit. Laska insinuates that Burnett was in fact dishonest, but his failure to present any evidence in support of his motion to suppress closes this avenue of attack to him; for it is well-settled that "[i]n the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search." United States v. Blakeney, 942 F.2d 1001, 1015 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 881 (1992).
 
 
 14
 Moreover, the facts set forth in the affidavit support an objectively reasonable belief in the existence of probable cause. Those facts obviously provide a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing[.]" Illinois v. Gates, 462 U.S. 213, 236 (1983) (citation omitted) (ellipses in original). Laska doubts the reliability of Burnett's confidential source, but her information was "reasonably corroborated" and "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Id. at 242, 245. Laska similarly impugns the motives behind the FBI surveillance, but his apparently baseless aspersions cannot obscure the fact that the agents witnessed the illegal disposal of asbestos. Laska also seems to suggest that the affidavit somehow cannot support an objectively reasonable belief in the existence of probable cause because it is silent with regard both to the circumstances of Fasco's entry into the warehouse and to whether Campano exceeded the scope of Laska's permission when he removed asbestos samples from the warehouse. Laska's suggestion, however, rests upon the mistaken assumption that a search is presumed unlawful unless the government proves otherwise. As we explained in Blakeney, the presumption is the other way round. See 942 F.2d at 1015. Since Laska refused to present any evidence in support of his position, he failed to rebut this presumption. His argument, then, is without merit.
 
 
 15
 Laska next argues that the district court improperly denied his motion to dismiss. Laska maintains the indictment against him should have been dismissed under Fed.R.Crim.P. 48(b), which provides:
 
 
 16
 (b) [Dismissal b]y Court. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.
 
 
 17
 Laska points out that he was not indicted until 18 months after the FBI concluded its investigation of him in April 1991, and asserts that this 18-month delay was "unnecessary delay" within the meaning of Rule 48(b).
 
 
 18
 We review a district court's denial of a motion to dismiss under the abuse of discretion standard. United States v. Overmeyer, 899 F.2d 457, 465 (6th Cir.), cert. denied, 498 U.S. 939 (1990). Laska's argument is meritless because Rule 48(b) only applies to unnecessary post-arrest delays in returning an indictment, see United States v. Marion, 404 U.S. 307, 319 (1972) ("[R]ule [48(b) ] clearly is limited to post-arrest situations"), and Laska was not arrested until after he was indicted.
 
 III.
 
 19
 Laska argues that the district court improperly refused to grant him a downward departure under section 5K2.0 of the Sentencing Guidelines. Laska requested this departure in a presentence motion. At Laska's sentencing hearing, the district judge stated that he had "thoroughly read ... and reviewed" Laska's brief in support of his motion, but refused to grant the departure because he "believe[d] that there was some effort made to cover-up the circumstances and to minimize the situation." (App. at 183, 203).
 
 
 20
 In United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir.1991), we held that "a district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable." Since Laska's attorney himself acknowledged that Laska's sentence was within the properly computed guideline range (see app. at 191), we decline to review the district court's refusal to depart downward in determining his sentence.
 
 
 21
 Finally, Laska argues that he was entitled to a one-level reduction of his base offense level under U.S.S.G. Sec. 3E1.1(b).[2] That subsection plainly states, however, that it does not apply unless the defendant's "offense level determined prior to the operation of subsection [3E1.1](a) is level 16 or greater[.]" Laska's offense level before the application of section 3E1.1(a) was only 14, so his argument is without merit.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Laska now asserts that, in February 1991, Fasco unlawfully inspected the warehouse not once but three times
 
 
 [2]
 Laska actually cites section 3E1.1(a) in his brief. Because the district court granted Laska a section 3E1.1(a) reduction, and because Laska bottoms this argument on his supposed "super-acceptance" of responsibility, we understand him to argue for a section 3E1.1(b) reduction