68 F.3d 475
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry L. PEVELER, Defendant-Appellant.
 No. 95-5155.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1995.
 
 On Appeal from the United States District Court, for the Western District of Kentucky, No. 93-00014; Jennifer B. Coffman, District Judge.
 W.D.Ky.
 AFFIRMED.
 BEFORE: JONES and DAUGHTREY, Circuit Judges, and GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant, Terry Peveler, appeals the district court's decision not to suppress items seized pursuant to an allegedly defective search warrant. Peveler claims that the affidavit on which the warrant was based did not sufficiently demonstrate the reliability of the confidential informant on whose tip the affidavit was based. He further claims that the warrant went beyond the scope of the affidavit by improperly authorizing seizure of weapons, despite the fact that the affidavit was silent as to weapons on the premises. We find no error on either basis and affirm.
 
 
 2
 The search warrant in question was executed at Peveler's residence on January 24, 1993. It was based on an affidavit made by Kentucky State Police Detective Charles Brownd, which stated:
 
 
 3
 I have received information from reliable confidential informant, who was at the residence of Terry Peveler on January 22, 1993 at approximately 7:00 pm. and observed a large quantity, possibly a kilogram, of what the confidential informant was told by Terry Peveler to be cocaine. The confidential informant observed Terry Peveler and Jamie Gross "break down" the suspected cocaine. Terry Peveler and Jamie Gross proceeded to repackage the substance in smaller quantities. After the substance was repackaged a portion of the substances was hidden in the head board of Terry Peveler's water bed. The remainder of the substance was placed in a green army duffle bag. The duffle bag was placed in a purse and then hidden in Terry Peveler's closet.
 
 
 4
 The Confidential Informant also observed a large amount of cash laying on the head board of Terry Peveler's bed.
 
 
 5
 The Confidential Informant also observed a large quantity of marijuana. The Confidential Informant, along with Jamie Gross and Gregory Conrad, left Terry Peveler's residence with approximately 3 pounds of marijuana. An undisclosed amount of marijuana was left at the Peveler residence.
 
 
 6
 Based on this affidavit, a search warrant was issued by a Kentucky state court judge, authorizing a search of the Peveler residence for "marijuana, cocaine, any other controlled substances, any apparatus used for processing, transfer, sale or use of marijuana, cocaine and any other controlled substances and all drug related controlled substances or contraband, including, but not limited to money and records and any and all weapons."
 
 
 7
 Pursuant to this warrant, officers seized marijuana and cocaine, a .38 caliber revolver, a .45 caliber derringer, a .12 gauge shotgun, and a 9mm pistol. During the suppression hearing, Detective Brownd testified that the .38 caliber handgun was found in the living room of the Peveler residence on top of a stereo cabinet. The shotgun was found propped up next to the bed, and the 9mm handgun was under the bed. According to the return on the search warrant, the derringer was also located on top of the stereo cabinet.
 
 
 8
 During the suppression hearing, Det. Brownd admitted that his affidavit contained no mention of firearms, but claimed that his informant had observed firearms at the same time he saw the drugs. Det. Brownd also testified that the informant had given police accurate information about the defendant's drug-related activities on two occasions in the recent past. Neither fact was recited in Brownd's affidavit, however, nor were they brought to the attention of the issuing magistrate.
 
 
 9
 Peveler was indicted in federal district court on various counts of conspiring to distribute, possessing with the intent to distribute, and distributing cocaine and marijuana. He was also charged with two separate counts of carrying and using a firearm during and in relation to drug trafficking crimes. Peveler moved to suppress evidence seized during the search of his home, arguing that the affidavit was facially insufficient and that the warrant and search exceeded the scope of the affidavit. The district court denied the motion to suppress on both grounds.
 
 
 10
 Thereafter, Peveler entered a plea agreement with the government, under which he pleaded guilty to three drug counts. He also entered a conditional guilty plea as to two counts involving possession with intent to distribute marijuana and cocaine and a third count of use of a firearm in committing a drug offense.[1] The conditional plea allowed him to appeal the denial of his suppression motion.
 
 
 11
 When reviewing the rulings of a district court on a motion to suppress evidence, this court applies the clearly erroneous standard to the district court's factual findings, and reviews the district court's legal conclusions de novo. United States v. Roberts, 986 F.2d 1026 (6th Cir.), cert. denied, 114 S. Ct. 271 (1993). A reviewing court accords great deference to a lower court's independent determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983). This court will reverse such determinations only if they are clearly erroneous. United States v. Williams, 962 F.2d 1218 (6th Cir.), cert. denied, 113 S. Ct. 264 (1992). A denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason. United States v. Barrett, 890 F.2d 855, 860 (6th Cir. 1989).
 
 
 12
 Whether probable cause exists to issue a warrant must be determined from the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). Prior to Gates, the Supreme Court utilized a two-pronged test for evaluating the sufficiency of affidavits involving informants. In Aguilar v. Texas, 378 U.S. 108, 114 (1964), the Court required the affiant to reveal the underlying circumstances from which the informant concluded that criminal conduct had occurred and why the affiant believed the informant to be credible. In Spinelli v. United States, 393 U.S. 410, 415-18 (1964), the Court held that the "basis of knowledge" requirement could be met through self-verifying detail, while independent law enforcement corroboration of details could satisfy the credibility component. Under Gates, informant credibility is still "highly relevant." 462 U.S. at 230. As we have recognized in applying Gates, an anonymous tip, unsupported by either some indicia of reliability or independent investigation, amounts to little more than mere suspicion and cannot supply probable cause. See, e.g., United States v. Leake, 998 F.2d 1359 (6th Cir. 1993).
 
 
 13
 Peveler complains that there was no independent investigation or corroboration indicated in Det. Brownd's affidavit. Although the district judge concluded that the affidavit supporting this warrant cited more than a simple anonymous tip, based on testimony that the informant had recently provided accurate information regarding two purchases from these defendants, she did so in the course of determining a separate issue not raised on appeal -- whether the affidavit contained false statements or material omissions and was thus vulnerable to a challenge under Franks v. Delaware, 438 U.S. 154 (1978).[2] Peveler correctly points out, however, that when the issue is one of probable cause, an affidavit must be evaluated solely on the basis of the information available to the judge at the time of issuance. Gates, 462 U.S. at 238; Leake, 998 F.2d at 1361. Det. Brownd testified that the judge asked no questions regarding the affidavit; thus, it represented the sum of information on which the warrant was based.
 
 
 14
 As a general rule, in those cases in which the source of information is a confidential informant, the affidavit recites some history through which that informant has proven to be reliable. However, under the totality of the circumstances test, there is clearly more than one way to validate informant information. In rejecting the rigidity of the former "two-prong test," the Gates court observed that the two inquiries required by that test, "reliability" and "basis of knowledge,"
 
 
 15
 ... are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.
 
 
 16
 If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip. Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity -- which if fabricated would subject him to criminal [liability] -- we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.
 
 
 17
 Gates v. Illinois, 462 U.S. at 233-35 (emphasis added).
 
 
 18
 In a recent Sixth Circuit opinion, we found probable cause based on detailed information obtained from an informant whose name was unknown but who "identified himself or herself at a transporter of prisoners who had just observed an individual attempting to sell drugs at a truck stop off Interstate 24." United States v. Pasquarille, 20 F.3d 682, 687 (6th Cir. 1994). We noted:
 
 
 19
 The fact that the informant identified himself or herself and that he or she personally observed the attempted sale distinguishes this tip from that in Gates wherein the Court found that an anonymous tip from someone who provided no personal knowledge for the information provided was, standing alone, insufficient to provide a basis for probable cause to believe that contraband would be found in the car and home of the defendant. Moreover, the informant's ability to describe in detail the type of the vehicle, the state from which the license plate was issued, and several of the characters contained on the license plate provides further support that the tip provided a sufficient basis for a probable cause determination.
 
 
 20
 Id. at 687-88 (citations omitted).
 
 
 21
 The defendant contends that the Gates "totality of the circumstances" standard cannot be satisfied here, pointing to two other cases from this circuit, United States v. Baxter, 889 F.2d 731 (6th Cir. 1989), and United States v. Leake, 998 F.2d 1359 (6th Cir. 1993). Although both opinions emphasize the need for police corroboration of an informant's reliability, both cases also involve anonymous tips, which, under Gates, must be independently verified by investigating officers. See, e.g., Leake at 1363. Moreover, we have here an affidavit supported by information supplied by a known informant, unnamed but deemed "reliable" by police officials, with avowed firsthand knowledge of drug trafficking by the defendant at the targeted premises. Clearly, that information contains a "richness of detail" that independently establishes firsthand observation at the scene. See United States v. Jackson, 898 F.2d 79 (8th Cir. 1990), cited in United States v. Leake, 998 F.2d at 1362. We conclude that the district court did not err in finding that Det. Brownd's affidavit supplied sufficient probable cause to make the resulting search warrant valid. Given this ruling, it becomes unnecessary to review the facts under the "good faith" exception recognized in United States v. Leon, 468 U.S. 897 (1984), which the government advances as an alternate basis for validating the search of Peveler's residence and the seizure of the drugs involved in this case.
 
 
 22
 Nor do we find any basis for suppressing the weapons found on the Peveler premises. The defendant argues, correctly, that the affidavit fails to provide any substantial basis to conclude that weapons would be found at his residence. From this, he argues further that the portion of the warrant authorizing the seizure of weapons was invalid.
 
 
 23
 As the district judge noted, however, even if the portion of the search warrant authorizing the seizure of weapons were deemed invalid and, therefore, stricken for failure to meet the Gates standard, the officers executing the warrant still had a right to seize weapons found in plain view on the Peveler premises, under Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). Once they seized the cocaine and marijuana located there, the weapons became evidence of the commission of an additional offense, under 21 U.S.C. Sec. 924(c). Their seizure, like that of the drugs, does not constitute a violation of the Fourth Amendment.
 
 
 24
 For the foregoing reasons, we find the evidence in question fully admissible and AFFIRM the judgment of the district court.
 
 
 
 *
 The Hon. Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Peveler was sentenced to a total of 181 months in prison, to be followed by five years of supervised release
 
 
 [2]
 The informant had been recruited after he was charged with felony theft. Thereafter, he made two controlled drug buys from Peveler in November and December. However, two days after this warrant was executed, the police discovered that the informant had not been fully truthful. Apparently, at the time when he claimed to have been at the Peveler residence witnessing the events described in the affidavit, he was actually in Lexington, Kentucky, with Peveler and two co-defendants, as Peveler sold some cocaine to a motorcycle gang. The events described in the affidavit occurred a few hours earlier in the day, a fact which the district judge found to be immaterial to the question of whether or not drugs were in the house