**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Abraxas HICKS, Defendant–Appellant.**

No. 01–3938.

United States Court of Appeals,
Sixth Circuit.

March 3, 2003.

Before NORRIS and GILMAN, Circuit
Judges; and McKEAGUE, District
Judge.*

OPINION OF THE COURT

McKEAGUE, District Judge.

On May 21, 2001, defendant Abraxas Hicks entered a conditional plea of guilty to the charge of conspiracy to possess with intent to distribute more than 500 grams of cocaine. The plea was entered after the district court denied defendant's motion to suppress evidence. Defendant admitted having mailed a package containing cocaine from Los Angeles to Columbus, Ohio, but challenged the search of the package, contending the search warrant was not supported by a showing of probable cause. The district court denied defendant's motion to suppress, concluding essentially that, even though the search warrant was defective, the evidence seized was not subject to suppression because the officer who conducted the search acted in good faith. Defendant was sentenced to 63 months in prison and now appeals the denial of his motion to suppress. For the reasons that follow, we affirm the judgment of the district court.

## I. FACTUAL BACKGROUND

The facts, not materially disputed, are summarized in the district court's opinion denying the motion to suppress as follows:

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

On February 8, 1998, the defendant purchased a Kenwood dual cassette stereo player from an electronics store in Hollywood, California. The defendant opened the stereo player, removed some of the parts, inserted a package of cocaine inside the stereo and taped the cocaine down. The defendant hid the cocaine in the stereo so that it would not be detected. Although there is no evidence as to how the defendant reassembled the stereo, he testified that, in his opinion, no one could tell from looking at the stereo that cocaine was concealed inside. He returned the stereo to its cardboard box, which measured twenty by nineteen by nine inches, and taped the box closed with what appears to be masking tape. The mailing label was hand written.

The defendant took the package to a post office for zip code 90027 in the Los Angeles area on February 9, 1998 and tendered the package for shipment via Express Mail. The package weighed fourteen pounds, fourteen ounces and cost $35.30 to mail. The defendant completed an Express Mail form naming a David Hill, 114 Georgetown, Columbus, Ohio 43214 as the addressee, and identifying a Mike Hansill, 2405 Corning Street # 10, Los Angeles, California 90034 as the sender. The defendant resided at one time at 2405 Corning Street, but he was not living there at the time he mailed the package. There is no evidence that anyone named Mike Hansill lives or stays at the residence, or even that anyone named Mike Hansill exists. The defendant did not use his own name on the label because he wanted to avoid detection. "Mike Hansill" was a false name used by the defendant to avoid detection.

The defendant testified that David Hill was a friend of his, but that he was not sure if Hill lived at the 114 Georgetown Street address. There is no other evidence that David Hill exists or that he ever lived or stayed at the Georgetown Street address, and in fact, as will be noted below, a person at the residence denied that David Hill resided there. Even assuming that David Hill exists, the court concludes that the defendant addressed the package to David Hill at the Georgetown address to permit the persons living there to disclaim any knowledge of the addressee if necessary to avoid detection when questioned by law enforcement officials.

When the Express Mail package arrived in Columbus on February 10, 1998, it came to the attention of Postal Inspector Jim Bogden. Bogden had been a postal inspector for seven years and had five years experience working narcotics investigations. Inspector Bogden's suspicions were aroused by the size of the package, the tape on the package, and the fact that much of the narcotics seized in Columbus, Ohio came from Los Angeles, California. He ran an address check by calling the post office in California, and was informed by the postal carrier that no one by the name of Mike Hansill received mail at the return address. He also called the post office in Columbus, and determined that no one named David Hill had ever received mail at the Georgetown Street address. A canine search of the package was conducted with negative results.

Shortly before 9:45 a.m. on February 10, 1998, Inspector Bogden proceeded to the Georgetown Street address. A woman answered the door at that residence, and Inspector Bogden asked if David Hill lived there. The woman responded, "No David Hill lives here." Inspector Bogden identified himself as being a post office employee, and stated that he had a package for David Hill. The woman responded that she didn't know David Hill. She then spoke with someone inside the apartment, and stat-

ed, "Oh yea, he's in the shower." Inspector Bogden stated that he needed to see some identification from David Hill. The woman spoke with someone in the apartment, and Inspector Bogden heard a male voice stating, "It's from California, does he have it? Get it from him." Inspector Bogden stated that he didn't have the package with him, that he just came to see if David Hill lived there. The woman replied, "He doesn't live here." Inspector Bogden then applied for a warrant to search the package. A United States magistrate judge issued the search warrant on February 10, 1998 at 12:51 p.m., and the cocaine hidden inside the stereo player was found.

District court opinion, pp. 1–4.

The search of the package revealed 994 grams of cocaine hydrochloride. A subsequent fingerprint examination of the package and its contents yielded latent fingerprints positively identified as belonging to defendant Hicks. Defendant was subsequently indicted on the charge of conspiring to possess with intent to distribute more than 500 grams of cocaine, to which he pleaded guilty.

In denying defendant's motion to suppress the evidence, the district court first found that defendant lacked standing to challenge the search. The court held that defendant, by using false names and a false return address, not only relinquished control over the package, but also knowingly increased the risk that the package would be undeliverable and would attract the attention of postal officials. Under these circumstances, the court held that defendant retained no expectation of privacy in the contents of the package which society would be prepared to recognize as reasonable. Nonetheless, the district court went on to consider the merits of defendant's wrongful search claim. The court found that the affidavit supporting the search warrant was clearly insufficient

to establish probable cause, but held the evidence seized was saved from suppression under the good faith exception to the exclusionary rule. Despite the insufficiency of the affidavit, the court held it was not so lacking in indicia of probable cause that Inspector Bogden could not reasonably and in good faith rely on it in executing the warrant issued by the magistrate judge. On appeal, defendant challenges the district court's resolution of both the standing and good faith exception issues.

## II. ANALYSIS

### A. Standard of Review

"When ruling on a motion to suppress evidence, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo.*" *United States v. Pollard,* 215 F.3d 643, 646 (6th Cir.2000). "Similarly, the trial judge's findings of fact regarding the defendant's standing to challenge alleged Fourth Amendment violations are examined for clear error, while the legal determination of standing is reviewed *de novo.*" *Id.* The same dual standard of review applies to the district court's ruling on the good faith exception to the exclusionary rule. *United States v. Leake,* 998 F.2d 1359, 1366 (6th Cir.1993).

### B. Standing

Defendant's standing to challenge the search of his parcel is dependent on the legitimacy of his expectation of privacy:

[T]he central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized.... A determination of whether a legitimate expectation of privacy exists involves a two-part inquiry. "First, we ask whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has

706

shown that he sought to preserve something as private.... Second, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable."....  Whether a legitimate expectation of privacy exists in a particular place or time is a determination to be made on a case-by-case basis.

*United States v. King,* 227 F.3d 732, 743–44 (6th Cir.2000) (citations omitted).

There is no dispute that defendant, through his actions in packing and labeling the package, exhibited an actual expectation of privacy in its contents. The question is whether his expectation is one that society is prepared to recognize as reasonable.

Letters and sealed packages are generally recognized as being in the general class of "effects" that are protected by the Fourth Amendment. *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The sender's legitimate expectation of privacy in the contents is generally deemed to continue until delivery. *United States v. King,* 55 F.3d 1193, 1196 (6th Cir.1995). In departing from the general rule in this case, the district court weighed the following considerations:

1. By consigning the package to a third party for shipment, defendant relinquished his control over it and accepted the risk that the postal service would open the package due to reasons of security, accident or damage.
2. Defendant shipped a package which met several characteristics in the postal service's "drug package profile," and was therefore likely to arouse suspicions of postal inspectors.
3. By addressing the package to David Hill at an address that, as far as defen-

dant knew, was not Hill's residence, defendant increased the risk (a) that the package would be undeliverable, and (b) that the actual residents would panic in the face of official inquiry and disclaim or abandon any interest in the package.
4. By using a false name as the sender and a false return address, and by addressing the package to a person not known to reside at the destination address, defendant employed fraudulent means in furtherance of a criminal scheme.

District court opinion, pp. 6–13. These considerations combined, in the opinion of the district court, to defeat the notion that defendant's expectation of privacy, though actual, should be considered reasonable and legitimate in the eyes of society.

The district court's analysis is not without case law support. *See e.g., United States v. Barry,* 673 F.2d 912, 919 (6th Cir.1982)(reasoning that one who sends drugs under circumstances likely to arouse suspicion increases risk of exposure and thereby degrades the reasonableness of his expectation of privacy); *United States v. Wood,* 6 F.Supp.2d 1213, 1224 (D.Kan.1998)(holding that one who conceals his interest in contents by failing to disclose his identity on the face of the package may be deemed to have abandoned or repudiated his interest); *United States v. Walker,* 20 F.Supp.2d 971, 973–74 (S.D.W.Va.1998)(holding that a package recipient's use of an alias in furtherance of criminal scheme defeated the reasonableness of his expectation of privacy). Yet, it is far from clear that the legitimacy of one's privacy expectation can be made to depend on the nature of his activities—innocent or criminal. *See United States v. Fields,* 113 F.3d 313, 321 (2d Cir.1997).[1]

1. Defendant also cites this court's unpublished opinion in *United States v. Caldwell,* No. 99–5465, 2000 WL 1277011 (6th Cir.

Aug.30, 2000), in support of his argument for recognition of standing.  *Caldwell's* significance is marginal at best.  Its discussion of

We need not resolve the question, however. Even assuming defendant's expectation of privacy was reasonable, conferring standing to challenge the search, it is apparent that the district court's ruling must nevertheless be affirmed on the basis of the good faith exception to the exclusionary rule.

C.   Good Faith Exception

The district court agreed with defendant's contention that Inspector Bogden's affidavit supporting application for the search warrant was insufficient. The court thus disagreed with the assessment of the issuing magistrate judge that probable cause had been shown. Accordingly, the search warrant was deemed invalid, a holding that the government has not challenged on appeal. The district court declined to suppress the fruits of the unlawful search, however, invoking the good faith exception to the exclusionary rule.

In *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that the exclusionary rule, the judicially created remedy for vindication of Fourth Amendment rights, "should be modified so as not to bar the admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective." The *Leon* court identified four specific situations in which the good faith exception does not apply, summarized as follows:

1.   where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

2.   where the issuing magistrate wholly abandoned his judicial role and served merely as a "rubber stamp" for the police;

3.   where the supporting affidavit was nothing more than a "bare bones" affidavit, so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

4.   where the warrant was so facially deficient—i.e., in failing to particularize the place to be searched or things to be seized—that the executing officers could not reasonably presume it to be valid.

*Id.* at 923, 104 S.Ct. 3405; *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998); *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir.1993).

In challenging the district court's application of the good faith exception, defendant relies primarily on the third situation, above, contending Inspector Bogden's affidavit was nothing more than "bare bones." A bare bones affidavit is one that "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Van Shutters*, 163 F.3d at 337 (6th Cir.1998), quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). A bare bones affidavit is one that supplies no more than a mere "guess that contraband or evidence of a crime would be found." *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir.1994).

In holding that Bogden's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the district court considered the following:

1.   The affidavit describes Bogden's specialized training and seven years' experience in investigating drug trafficking.

2.   The affidavit states that drug traffickers have been using Express Mail to transport controlled substances and

standing is not only equivocal, but also dictum, as the court then expressly refrained, as

we do today, from resolving the standing issue.

notes that the subject package was sent by Express Mail.

3. The affidavit states that the package was shipped from a recognized drug source city, Los Angeles.

4. The affidavit states that drug traffickers commonly use fictitious names and addresses, and that the names on this package did not match the return and destination addresses.

5. The affidavit states that a postal official attempted to deliver the package and was told the addressee David Hill did not live there.

District court opinion, pp. 17–19.

Defendant insists these considerations do not present a substantial basis for finding probable cause—especially when viewed in light of the negative canine sniff test results. He also identifies details within Bogden's knowledge that were conspicuously omitted from the affidavit, e.g., that the stereo box had been opened and re-taped; the return address and destination address were hand-written; and statements made by the occupants of the addressee residence were contradictory and suspicious. Obviously, the affidavit would have been stronger had these additional details been included.[2] Yet, the district court restricted its analysis to the contents of the affidavit, without regard to Bogden's subjective knowledge of additional circumstances.

We agree that the Bogden affidavit is not a bare bones affidavit. Although the Bogden affidavit may fall short of establishing probable cause, it is not devoid of "factual circumstances regarding veracity, reliability and basis of knowledge." The affidavit not only includes Bogden's training and experience as a postal inspector, but also sets forth the bases for his knowledge of all included factual averments.

Nor can Bogden's probable cause opinion be fairly characterized as a "mere guess" that contraband would be found. The affidavit describes the investigative steps taken by Bogden and, while forthrightly reporting the negative canine test results, also plausibly explains why the results are not necessarily inconsistent with the presence of narcotics. The Bogden affidavit is in these respects markedly superior to other affidavits that have been found to be bare bones affidavits. *See United States v. Williams,* 224 F.3d 530, 532–33 (6th Cir.2000)(citing examples); *Van Shutters,* 163 F.3d at 338 (same).

Accordingly, we conclude that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. We therefore find no error in the district court's decision that the good faith exception to the exclusionary rule is applicable. The motion to suppress evidence was properly denied.

## III. CONCLUSION

Assuming, without holding, that defendant had a legitimate expectation of privacy in the contents of the searched package, his motion to suppress evidence was properly denied because, even though the search warrant may not have been supported by a showing of probable cause, the good faith exception to the exclusionary rule was properly invoked to save the evidence from suppression.

Accordingly, the district court's ruling denying the motion to suppress evidence is hereby AFFIRMED.

---

**2.** Bogden's failure to include these details in the affidavit is not explained. He testified that he did not leave them out for any particular reason. Evid. hrg. tr. p. 47.