*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0133p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 08-5239

JAMES THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00148-001—Robert L. Echols, District Judge.

Argued: December 4, 2009

Decided and Filed: May 13, 2010

Before: KENNEDY, MOORE, and WHITE, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Mark C. Scruggs, Sr., JOHNSON, SCRUGGS & BARFIELD, Nashville, Tennessee, for Appellant. Blanche B. Cook, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Mark C. Scruggs, Sr., JOHNSON, SCRUGGS & BARFIELD, Nashville, Tennessee, for Appellant. Blanche B. Cook, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which WHITE, J., joined. MOORE, J. (pp. 18-24), delivered a separate opinion dissenting in part and concurring in part.

—————————————

**OPINION**

—————————————

KENNEDY, Circuit Judge. Defendant-Appellant James Thomas pleaded guilty under a conditional plea agreement to one count of manufacturing 100 or more marijuana plants and one count of possession with intent to distribute a detectable amount of marijuana,

1

in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Thomas now exercises a right he reserved under the plea agreement by appealing the district court's denial of his motion to suppress the evidence that law enforcement agents seized from his trailer home during execution of a search warrant.  Thomas also appeals his sentence, claiming that he was not given certain sentence reductions to which he is allegedly entitled.  Because there was probable cause to support the issuance of the search warrant in this case, we AFFIRM the district court's order denying Thomas' motion to suppress.  Additionally, we DISMISS Thomas' sentence appeal to the extent that he knowingly and voluntarily waived his right to appeal it through his plea agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2005, Tennessee Bureau of Investigation Special Agent Dennis Mabry presented an application for a warrant to search the premises of 3971 Taz Hyde Road in Nashville, Tennessee to a judge of the Metropolitan Davidson County, Tennessee Court. In his affidavit in support of the warrant, Mabry recited information that was provided to him by Drug Enforcement Administration Special Agent John Hardcastle, a twenty-year veteran of the DEA who had been involved in an investigation of Thomas.  The relevant portions of the affidavit[1] contained the following information:

> 1.  SA John Hardcastle with the Drug Enforcement Administration (DEA) recently met with a Confidential Informant (CI) who works for DEA.  This CI provided information regarding [sic] illegal indoor marijuana grow operation located at 3971 Taz Hyde Road, Nashville, TN.  This CI has worked with SA Hardcastle, and has given him reliable information within the past year.  Information provided by this CI has led to the successful arrests and prosecution of three subjects who were arrested.  Two were charged and convicted in Federal Court.
>
> 2.  The CI has informed SA Hardcastle that James I. THOMAS has had a reputation within the marijuana community of Nashville for the past two to three years as being a successful producer of just not [sic] leaf marijuana, but the more sought after "bud" of the plant, which is more expensive and produces a greater high for the user.  Typically one ounce of the "hydroponically" produced bud will sell as for a high [sic] as $250.00 per ounce.

---

[1]Although the actual information was provided by Hardcastle, Mabry was the affiant.

3. The CI informed SA Hardcastle where James I. THOMAS lived. SA Hardcastle was able to confirm by [sic] THOMAS'S driver's license has the address of 3971 Taz Hyde Road. SA Hardcastle discovered that THOMAS has an active gun permit with the address listed as 3971 Taz Hyde Road. On 10-18-2005 at approximately 10:15 am, SA Hardcastle drove by the residence of 3971 Taz Hyde Road and observed THOMAS standing in the driveway smoking a cigarette.

4. According to the reliable CI, he/she has been to the residence on at least three occasions and observed THOMAS conduct narcotic transactions. The CI has observed THOMAS exit the residence with marijuana and sell the marijuana to customers on at least three occasions.[2]

5. According to Nashville Electric Service, the subscriber to this residence is Sandra G. Brumit the girlfriend of James I. THOMAS.[3] According to Metro Nashville Property records, Brumit is the owner of the property. The house has a finished area of 1059 square footage. SA Hardcastle pulled electricity records for that address from March 2005 through September 2005. The research conducted by SA Hardcastle revealed usage which SA Hardcastle and I believe to be high usage. The following information was provided by Nashville Electric Service (NES) to the [sic] SA Hardcastle for the electrical usage at 3971 Taz Hyde Road:

| | |
|---|---|
| March | 2005 - $345.24 |
| April | 2005 - $371.22 |
| May | 2005 - $337.51 |
| June | 2005 - $436.28 |
| July | 2005 - $513.90 |
| August | 2005 - $499.63 |
| Sept. | 2005 - $530.46 |

6. The following information was provided by the Nashville Electric Service (NES) to SA Hardcastle for the electric usage for the neighbor of THOMAS located at address of 3986 Taz Hyde Road. The square footage of the residence according to the Davidson County is 1568 square footage of finished area.

| | |
|---|---|
| May | 2005 - $125.00 |
| June | 2005 - $181.64 |
| July | 2005 - $202.78 |

---

[2]The affidavit does not mention (here or anywhere else) that this information pertaining to Thomas was more than eight months old.

[3]The agents would later discover that Brumit was in fact Thomas' mother, not his girlfriend.

Aug    2005 - $221.89
Sept    2005 - $233.21

7. According to the NES records, THOMAS'S residence regularly uses more electricity than the neighbor. THOMAS pays twice as much a month on a regular basis which you [sic] affiant knows is something that is very common with indoor marijuana grow operations.

8. Indoor marijuana cultivation operations typically use large volumes of electricity to operate the advanced lighting systems used in such operations. An indoor grow operation can generate marijuana year round if the growing operation is managed properly. An indoor grower of marijuana will use a technique that is referred to as an "up cycle" to increase the lighting given to the marijuana simulate [sic] the coming of fall to make the marijuana plants to [sic] produce more "buds" on the plants.

9. NES disclosed to the Affiant that the January 2005 bill was for $745.00. Given the recorded square footage of the 3971 Taz Hyde Road location and the utility usage, it strongly appears that James I. THOMAS is "cycling up" on his utility usage which indicates that THOMAS is running a marijuana cultivation operation on the 3971 Taz Hyde Road location.

10. Davidson County property records reveal that there are at least two "out buildings" located on the property out of sight from the front of the property. Property records do not indicate that there are any other structures on the property that would legitimately use such a high volume of electricity such as a heated pool or air conditioned buildings other that [sic] the residence.[**4**]

Based on this information, the judge issued a search warrant, which was executed on October 26, 2005. When the officers arrived at the Taz Hyde property, they discovered that Thomas, as well as his girlfriend and their two children, lived in a freestanding trailer home behind the main building of the property. Agents searched the trailer and seized the following: 128 living marijuana plants growing in soil; five pounds of processed marijuana; indoor marijuana grow equipment; five handguns and a sawed-off shotgun; $5,600 in cash; and six motorcycles. Thomas was arrested and later charged in the Middle District of Tennessee with one count of manufacturing 100 or

---

**4**Agent Hardcastle would later testify in the suppression hearing that, during his investigation, when he drove up to the Taz Hyde property, he could not see any buildings other than the house that might use a substantial amount of electricity.

more marijuana plants and one count of possession with intent to distribute a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Thomas filed a motion to suppress the seized evidence on the ground that the search warrant was not supported by probable cause. The district court held a suppression hearing on April 25, 2007. At the hearing, Agent Hardcastle testified and essentially reiterated all of the information found in the warrant affidavit. He denied making any intentional or reckless misrepresentations in the affidavit. Hardcastle did admit that the marijuana sales referred to by the confidential informant had taken place eight months before, but he testified that he considered the information reliable because the confidential informant maintained his connections with the marijuana community and the information "was still being renewed" by the informant. For the defense, Thomas' mother, Sandra Brumit, testified that the Taz Hyde property contained a main dwelling, a garage, and Thomas' trailer, all of which were heated and cooled with electricity. Brumit also claimed that the property had a pool that used an electrical pump "24-7" during the summer. Brumit also said that she had no knowledge her son was growing marijuana and that she had never been inside his trailer. Finally, the defense proffered a licensed electrical engineer who testified that no conclusions could be made about the electrical bills without detailed studies on the electrical utilities being used at the Taz Hyde property (and at the comparative neighboring property).

On May 30, 2007, the district court issued an opinion and order denying Thomas' motion to suppress. In so ruling, the district court found Agent Hardcastle's testimony credible and Sandra Brumit's testimony not credible. The court found that Thomas failed to make a preliminary showing that any of the agents knowingly, intentionally, or recklessly made any false statements necessary to the finding of probable cause. Accordingly, the court refused to grant Thomas a probable cause hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The court then found that, based on the information in the affidavit, there was probable cause to justify the search warrant. First, it found the confidential informant's tip to be reliable. Second, it ruled that the tip was not stale because the relevant crime was a marijuana growing operation, which is

entrenched activity and thus less subject to time constraints.  Third, the court noted that the electrical records corroborated the informant's tip, thereby refreshing it even if it were stale.  Finally, the court held that even if the search warrant affidavit were deficient, the good faith exception, pursuant to *United States v. Leon*, 468 U.S. 897 (1984), was applicable in this case and prevented the evidence from being excluded at trial.

On June 12, 2007, Thomas pleaded guilty to both counts on which he was indicted as part of an agreement he made with the government.  In exchange for this plea, the government agreed not to appeal the sentence Thomas would receive, and it also agreed to recommend a three-level sentence reduction for acceptance of responsibility.  Thomas, in addition to his plea, also agreed to waive his right to appeal any ruling (including a within-guidelines sentence) except for the suppression denial.  These conditions were clearly delineated in the written plea agreement which Thomas signed, and he also recognized the terms of the agreement after being questioned by the judge during the plea hearing.  The district court eventually sentenced Thomas to five years in prison, the statutory minimum.  This appeal followed.

## DISCUSSION

### I.  Probable Cause Determination

*A.  Standard of Review*

We review the district court's probable cause determination at a suppression hearing under two "complementary" standards.  *See, e.g.*, *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003) (quoting *United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir. 1993)).  Any and all factual findings are reviewed for clear error, while all conclusions of law are reviewed *de novo*.  *Id.* (quoting *United States v. Smith*, 182 F.3d 473, 476 (6th Cir. 1999), and *Leake*, 998 F.2d at 1362).  Furthermore, the findings of the state court judge who issued the search warrant are entitled to "great deference" and will be overturned only if this Court finds them to be arbitrary.  *Id.* (quoting *United States v. Greene*, 230 F.3d 471, 478 (6th Cir. 2001)).  We must be cautious not to partake in

"after-the-fact scrutiny . . . [that] takes the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

*B. Probable Cause Analysis*

Although Thomas cites *Franks v. Delaware*, 438 U.S. 154 (1978), multiple times in his brief, he does not specifically appeal the district court's refusal to grant a *Franks* hearing as to the validity of the search warrant. Instead, Thomas only argues that Agent Mabry's warrant affidavit was insufficient to support the state court judge's (and later, the district court's) finding that there was probable cause to search the Taz Hyde property.

The Fourth Amendment mandates that a search warrant may only be issued upon a showing of probable cause. U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). Probable cause exists "when there is a 'fair probability' . . . that contraband or evidence of a crime will be found in a particular place." *Helton*, 314 F.3d at 859 (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). In other words, a magistrate need only find "reasonable grounds for belief" that evidence will be found in order to justify the issuance of a search warrant. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). When an affidavit is the basis for a probable cause determination, the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239. Search warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny. *Id.*; *see also United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

When an affidavit relies on hearsay information from a confidential informant, the judicial officer (and reviewing court) must consider the veracity, reliability, and basis of knowledge for that information as part of the totality-of-the-circumstances review. *Helton*, 314 F.3d at 819 (citing *Gates*, 462 U.S. at 238). This is a "practical, common-sense decision." *Gates*, 462 U.S. at 238. "[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those

facts need not take any particular form." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). In fact, independent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable. *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc). "[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *Helton*, 314 F.3d at 820 (quoting *Smith*, 182 F.3d at 483); *see also Allen*, 211 F.3d at 976 (affirming probable cause determination based on an informant's uncorroborated tip because informant had reliably worked with the officer in the past). In such cases, the affiant need only attest "with some detail" that the informant provided reliable information in the past. *See McCraven*, 401 F.3d at 697. Otherwise, he or she should indicate that the police corroborated significant parts of the informant's story. *See id.* In sum, "[a]s long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *Id.*

The instant case presents us with an affidavit offering a relatively thin justification for probable cause. Nevertheless, we find that the affidavit contains enough of the aforementioned elements that can be used to support a finding of probable cause. First, the affidavit contains specific information from a confidential informant indicating that evidence of a crime would be found at the Taz Hyde property. The affidavit alleges that the informant provided both a tip that there was a marijuana grow operation at Thomas' residence, and also (despite our dissenting colleague's claim to the contrary[5]) a specific tip that Thomas had a reputation in the Nashville community for over two years as being a successful producer "of just not [sic] leaf marijuana, but the more sought after 'bud' of the plant." Second, the affidavit provides "with some detail" the informant's positive prior record of giving accurate information to the police. *See id.* The affidavit specifically states that the informant had provided police with reliable information in the past year, and that his information had led to the arrest and

---

[5]Our dissenting colleague states that the tip is "vague" and "bald." While we note that the tip is not perfect, it is far from bald. In fact, it provides several specific details, as we note here.

prosecution of three subjects, two of whom were charged and convicted in federal court.[6] Third, the affidavit indicates that the police corroborated significant parts of the informant's story. For example, the affidavit explains that the police were able to confirm through a driver's license search that Thomas in fact lived at the location provided by the informant. More importantly, the affidavit includes the recent electricity usage records of the Taz Hyde property, which indicated that the property was using much more electricity than a comparably sized property in the same area.[7] In dissent, our colleague separates each of these elements from the others and notes their deficiencies individually. Admittedly, each element of the affidavit, when viewed in a vacuum, is less persuasive or even insufficient by itself to support probable cause here. But when the evidence is viewed together and in totality, as required, *Gates*, 462 U.S. at 233, the information contained in the affidavit provided a reasonable basis for believing that evidence of marijuana possession and manufacture would be found at the Taz Hyde property.

In an attempt to undercut this conclusion, Thomas raises two principal arguments. First, he refers to four parts of the affidavit that he claims are either wrong or contain material omissions. Thomas alleges that paragraph 1 of the affidavit fails to state with sufficient specificity the types of information the informant had provided in the past, the informant's experience with drugs, or the basis of the informant's relationship with police. Thomas then claims that paragraph 2 fails to sufficiently explain why Thomas apparently had a reputation in the Nashville community for

---

[6]The dissent fails to recognize this important detail. As noted above, when an affidavit indicates the reliability of the informant, the tip *on its own* can be sufficient to support probable cause. *E.g., Allen*, 211 F.3d at 976. In fact, this is what distinguishes the instant case from *United States v. Hammond*, 351 F.3d 765 (6th Cir. 2003), the case on which our colleague relies with respect to this issue. In *Hammond*, the officer seeking a warrant failed to provide "any detail" as to the informant's reliability. *Id.* at 772. Here, there was ample evidence of the informant's reliability. In addition, *Hammond* is inapplicable because the informant's tip in the instant case is *not* the only piece of evidence in the affidavit to support the judge's probable cause finding and warrant issuance.

[7]The dissent cites *United States v. Zimmer*, 14 F.3d 286, 287-89 (6th Cir. 2004), and *United States v. Thomas*, Nos. 92-6207, 92-6208, 1993 WL 337553, at *5 (6th Cir. Aug. 31, 1993), in support of the assertion that "electrical-usage records . . . cannot form the sole basis of probable cause." Dissenting Op. at 2. We question the relevance of that assertion, given that there is more than the mere electrical records in the instant case to support the probable cause finding. Nevertheless, we feel it worth noting that *Zimmer* and *Thomas* are merely examples of this Court affirming probable cause findings that relied in part on electrical-usage records.

marijuana. Thomas next alleges that paragraph 3 does not explain whether the informant's description of Thomas' residence was correct. Finally, Thomas claims that the affidavit contains no information establishing that there might still be marijuana on the Taz Hyde premises at the time the affidavit was submitted. Based on these allegations, Thomas argues that the affidavit fails to establish probable cause.[8]

The problem with Thomas' arguments here, like that of the dissent, is that they focus on what the affidavit lacks. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. Thomas' argument, like that of the dissent, relies on line-by-line scrutiny, not a totality review of the affidavit. *See Gates*, 462 U.S. at 238. When scrutinizing each line of an affidavit, one could always find some question left unanswered or some issue unresolved. When properly looking at the affidavit in this case under the totality of the circumstances, the information that the affidavit does contain provides enough to support a finding of probable cause.

Thomas' second argument challenging the affidavit is that the confidential informant's tip was stale because it was over eight months old. "A determination of whether an informant's tip is stale rests on several factors including 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).'" *Hammond*, 351 F.3d at 771 (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)). The question of staleness, then, depends

---

[8]At this point in his brief, Thomas also asserts that Agent Harcastle's information was "included in reckless disregard for the truth. Pursuant to *Franks v. Delaware*, these allegations should be excised." Under *Franks* and its progeny, the district court is required to hold a hearing as to the sufficiency of the affidavit if the defendant can make a substantial preliminary showing that a false statement necessary to the finding of probable cause was made knowingly and intentionally or with reckless disregard for the truth and was included in the affidavit. *Franks*, 438 U.S. at 155-56. Thomas, although citing to *Franks*, never asks this Court to review the decision of the district court denying a *Franks* hearing. Rather, he only asks that certain statements in the affidavit be excised. We agree with the district court that Thomas has failed to show that the affiant in this case knowingly and intentionally inserted a false statement into the affidavit. The only allegation that comes close to this standard revolves around the affiant's failure to include the fact that the marijuana-sale information was eight months old. However, the standard for omissions is more difficult to meet than for false affirmative statements, *see, e.g.*, *United States v. Fowler*, 535 F.3d 408, 415-16 (6th Cir. 2008), and is a standard which has not been satisfied here.

on the "inherent nature of the crime." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quoting *United States v. Haimowitz*, 706 F.2d 1549, 1554-55 (11th Cir. 1983)). A marijuana growing operation, which is a long-term operation, may allow for greater lapses of time between the information relied upon and the request for a search warrant. *See United States v. Greany*, 929 F.2d 523, 525 (6th Cir. 1991); *Thomas*, 1993 WL 337553, at *3. Furthermore, information from an informant that is otherwise stale may be "refreshed" if the affidavit contains "recent information [that] corroborates otherwise stale information." *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998).

Here, the NES utility usage records sufficiently refreshed the informant's tip.[9] *See Zimmer*, 14 F.3d at 287-89 (relying in part on electrical records to corroborate a probable cause finding); *Thomas*, 1993 WL 337553, at *5 (same). The affidavit contained the Taz Hyde property electrical bills for the six months leading up to the submission of the warrant application. The affidavit also provided the comparable monthly bills for a neighboring property, and the bills of the neighboring property were on average less than half as high. Furthermore, the numbers indicated that energy usage at the Thomas property was generally increasing over time, which the affidavit indicated suggested that Thomas was "cycling up" to stimulate the marijuana plants to produce more buds. Thus, this evidence corroborates the informant's tip that Thomas was a marijuana grower (not just a sporadic seller) and thereby refreshed the informant's information. *See Zimmer*, 14 F.3d at 287-89; *Thomas*, 1993 WL 337553, at *5.

Thomas challenges this refreshing evidence on two main grounds: 1) the affiant was not an electrical expert, and 2) there was a second residence on the Taz Hyde property. Thomas' first argument is simply contrary to existing Sixth Circuit precedent, which has credited electrical usage records in similar contexts without the testimony or analysis of an electrical expert. *See Zimmer*, 14 F.3d at 287-89; *Thomas*, 1993 WL 337553, at *5. Thomas' second argument is essentially that nothing can be inferred from

---

[9]The dissent errs in characterizing these records as merely refreshing the tip. Dissenting Op. at 3 ("Even assuming the electrical-usage records refreshed the reputation statement, . . . the reputation statement here is not sufficient to support probable cause.") Indeed, the records also serve as corroborating evidence that a grow operation was ongoing at Thomas' residence.

the higher energy usage on Defendant's residence because the bills represented the energy usage of two residences, not just one. Thomas' argument, while somewhat compelling using hindsight, is simply unavailing under the proper standard of review. We must review the evidence submitted in the warrant application as it was available to the officers and the judge. *See Gates*, 462 U.S. at 238. In this case, the officers viewed the Thomas property to the best of their ability from the road and reported their findings in the affidavit. In paragraph 10, the affiant indicated that he searched Davidson County property records and found two "out buildings" on the Taz Hyde property, but no other buildings that would use a high volume of electricity. Based on this information,[10] we agree with the district court and government that these records both refreshed and corroborated the informant's tip. Consequently, we find that, based on the entirety of the affidavit (including the tip), there was a substantial basis to believe criminal activity or evidence of a crime would be found at the property.

## II. *Leon* Exception

In its opinion and order denying Thomas' motion to suppress, the district court also ruled that the *Leon* good-faith exception was applicable even if the search warrant were deficient. In his brief to this Court, Thomas' counsel recites verbatim the elements of the *Leon* doctrine but fails to explain how they entitle him to any relief. Nor does he actually argue that the district court's *Leon* ruling was error. However, since Thomas would also need a reversal of this decision in order to gain relief, and because his brief does refer to the *Leon* doctrine, we will review this decision as well.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court established that the Fourth Amendment exclusionary rule does not apply in cases where law enforcement officers acted in good faith and reasonably relied on a search warrant that is ultimately found invalid. The inquiry on review is "whether a reasonably trained police officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* at 922 n.23. To help reviewing courts properly answer this question,

---

[10]It would be a different case if the officers had known about the second building but failed to reveal its existence to the judge issuing the search warrant. But that case is not before us.

the Court identified four specific situations in which an officer's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable: 1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; 2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914-23).

In this case, Thomas has failed to satisfy any of these exceptions. Thomas has not submitted any evidence to suggest that the state court served as a rubber stamp for police activity. And we have already explained above that Thomas has failed to show that the officers knowingly inserted false information into the affidavit or even acted in reckless disregard for the truth. Based on our analysis above regarding the facial validity of the affidavit and search warrant, we also cannot say that a reasonable officer could not have presumed the affidavit and warrant to be valid. In an attempt to undercut this ruling, our dissenting colleague again improperly divides and attacks the evidence provided in the affidavit instead of viewing the evidence in its totality. We agree with the district court's explanation that the officers "presented a neutral judicial officer with an affidavit stating that he was aware of information indicating the presence of a marijuana growing operation at a specific location based on the report of a reliable informant that was corroborated by electric usage records and other details about the Defendant." The officer in this case independently investigated and corroborated the informant's tip "to the extent possible," *see United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000), both in his verification of Thomas' address and in his obtaining the NES records. Accordingly, we find the district court did not err in concluding that the officers acted in good faith in seeking the search warrant, and the exclusionary rule would not apply here even if the information in the search warrant failed to establish probable cause.

**III. Sentence Appeal**

Thomas also appeals his sentence. Specifically, he seems to argue that his guideline range, beginning with the statutory mandatory minimum, was incorrect because he was entitled to the "safety valve" in United States Sentencing Guidelines ("U.S.S.G.") § 5C1.2, which would have allowed the district court to sentence Thomas based solely on his calculated guideline range without regard to the statutory mandatory minimum as the starting point. Thomas' brief does not address how our review of this issue is not precluded under his plea agreement's waiver provision. This Court reviews *de novo* the scope and validity of an appeal waiver, interpreting plea agreements strictly and "'with ambiguities construed against the government.'" *United States v. Jones*, 569 F.3d 569, 571-72 (6th Cir. 2009) (quoting *United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir.), *cert. denied*, 549 U.S. 1088 (2006)). Under *United States v. Jones*, Thomas' appeal waiver requires further consideration before we can declare that it waived his right to appeal the denial of the "safety valve" in § 5C1.2 based on its impact for his guideline range.

In *Jones*, the district court determined the defendant's applicable guideline range as 70 to 87 months, but sentenced the defendant to 180 months based on two consecutive statutory mandatory minimum sentences. *Id.* at 571-72. Under his plea agreement, the defendant had waived his "'right to appeal any sentence which is at or below the maximum of the guideline *range*,'" but the defendant appealed solely on the grounds that the ten-year mandatory-minimum sentence imposed was unconstitutional. *Id.* at 572-73 (quoting Plea Agreement ¶ 10). This Court held that the ambiguity in whether a statutory mandatory-minimum sentence that becomes the "guideline sentence" under U.S.S.G. § 5G1.1(b) "also constitutes the 'guideline range' referenced in the plea agreement" must be construed against the government to be a distinct concept. *Id.* at 572. Faced with "two reasonable interpretations" of § 5G1.1, we concluded that we must construe "above the guideline range" strictly against the government, finding

> § 5G1.1(b) contemplates a two-step process: first, the sentencing court must calculate the applicable guideline *range*; next, the sentencing court must determine whether the statutory minimum exceeds the top of the

properly calculated guideline range. If the statutory minimum is greater than the top of the guideline range, the statutory minimum becomes the guideline *sentence*. On this reading of § 5G1.1(b), the guideline *range* does not become equivalent to, or merge into, the statutory minimum/guideline *sentence*.

*Id.* We found it particularly telling that other plea agreements avoided this ambiguity by explicitly including a waiver of both guideline range and mandatory-minimum guideline sentence appeals. *Id.* at 572-73. Thus, because the defendant's guideline *sentence* of 180 months exceeded his applicable guideline *range* of 70 to 87 months that the district court had calculated prior to considering the statutory mandatory minimums, we held that the defendant's appeal waiver did not preclude his challenge to the mandatory minimum. *Id.*

Here, Thomas signed a plea agreement and a "Petition to Enter a Plea of Guilty" on the same day as his plea hearing. Thomas' plea agreement stated that Count 1 "carries a term of imprisonment of not less than 5 years" and that "For purposes of determining the U.S.S.G. *recommended sentencing range*, the United States and Defendant agree . . . [that 21 U.S.C. §] 841(b)(1)(B)(viii) requires a statutory minimum term of imprisonment of five years[, and,] [a]ccordingly, absent relief from the statutory minimum *sentence*, Defendant's *sentence* would be five years, pursuant to U.S.S.G. § 5G1.1(b)." (Emphases added.) Although the plea agreement noted that Thomas and the government disagreed on the applicability of the safety valve under § 5C1.2, the "Waiver of Appellate Rights" section stated, in relevant part,

> It is further agreed that (I) Defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence *within or below the Anticipated Guidelines Range* . . . . This provision is binding on the parties even if the Court employs a U.S.S.G. analysis different from that stipulated to herein. . . . Acknowledging [18 U.S.C. § 3742], *Defendant knowingly waives the right to appeal* any sentence within the maximum provided in the offense level as determined by the Court or *the manner in which that sentence was determined* on the grounds set forth in 18 U.S.C. § 3742 or *on any ground whatever*, in exchange for the concessions made by the United States in this Plea Agreement. Defendant also knowingly waives the right to challenge the sentence imposed and the manner in which it was

determined in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241.

(Emphases added.) Thomas' petition further acknowledged "the statutory penalty for the offense(s) with which I am charged" and that "I have been advised by my attorney that the *guideline range* in my case should be from *mandatory 5 years* to *N/A* months" in a pre-printed, fill-in-the-blank format; Thomas also initialed a handwritten "mandatory minimum of 5 years on Count 1." (Emphasis added.) Thomas again acknowledged this anticipated range and his § 5C1.2 argument at his plea hearing.[11] Although Thomas' Presentence Investigation Report stated that his "range" based solely on his offense level would have been 18 to 24 months of imprisonment, the district court

---

[11]Specifically, the hearing included this conversation:

THE COURT: . . . .

 [The *Petition to Enter a Guilty Plea*] also says in the middle of the paragraph that you've been advised by your attorney that the guideline range in your case should be from the mandatory five years to - - and it says not applicable months.

 So it appears that *your attorney has estimated your guideline range would be the mandatory five years in that case*. I'll look and see what the *Plea Agreement* says.

 . . . .

MR. SCRUGGS [Defense counsel]: I advised [Thomas] that the mandatory minimum under the statute is a mandatory minimum of five years. But in the *Plea Agreement* we're going to be asking the Court to consider the safety valve, which would take it back down to between 27 and 33 months.

THE COURT: Okay. Let's see.

 There's a discussion of the calculation of the guidelines in the *Plea Agreement*, beginning at the top of Page 8. . . .

 . . . .

 Mr. Thomas, it looks like your lawyer and the Government's lawyer are saying with regard to Count 1 then, that there is a statutory minimum sentence of five years unless you're granted some relief under the safety valve, which Mr. Scruggs says you're entitled to.

 This says that the Government contends that you will not be eligible for this relief that's available to you under that safety valve statute, which allows the Court in that event to sentence less than five years.

 . . . .

 So that's the situation with regard to Count 1. That's what is being recommended to me and estimated to you by your lawyer.

 . . . .

 They do recommend some guidance to the Court about the governing statute, as well as what the guideline calculation should be, but *there's no certain guideline range in your case at this point*.

 Do you have any questions about any of that?

THE DEFENDANT: No, sir.

 . . . . [Continued plea colloquy; begins discussion of scope of appeal waiver]

MR. SCRUGGS: Your Honor, my understanding is that if for some reason the Court departs upward, though, *outside the guideline range*, we could appeal that.

THE COURT: Okay. I think that's right. I didn't read it carefully.

 What you're saying is so long as the Court imposes a sentence within the *anticipated guideline range*. And the Government also waives its right to appeal the sentence unless the Court goes below the guideline range.

(Emphases added.)

determined that Thomas' "ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES)" was a flat "*60* months" and that he was not eligible for the § 5C1.2 safety valve.

Therefore, because Thomas' plea agreement and petition explicitly tied the calculation of his guideline range to the statutory mandatory-minimum sentence and he clearly waived the right to appeal the district court's calculation of his guideline range and sentence, the reasoning in *Jones* does not apply.  *Jones*, 569 F.3d at 571-73; *see also Caruthers*, 458 F.3d at 471 ("Moreover, the district court's decision to apply the mandatory minimum of the ACCA is literally an aspect of 'the manner in which that sentence was determined.'"); *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004) (holding that if an otherwise valid waiver of appellate rights in a plea agreement does not reserve the right to *appeal* a denial of an adjustment in the offense level, even if it reserves the right to *seek* an adjustment in the offense level at sentencing, then the right to appeal the denial or the calculation is waived).  Thomas is thus foreclosed from challenging the district court's decision that U.S.S.G. § 5C1.2 did not apply to alter the calculation of his guideline range based on the statutory mandatory minimum.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's denial of Thomas' motion to suppress, and we DISMISS Thomas' sentence appeal.

---

**DISSENTING IN PART AND CONCURRING IN PART**

---

KAREN NELSON MOORE, Circuit Judge, dissenting in part and concurring in part. I dissent from Parts I and II of the majority opinion because I believe that the affidavit is not sufficient to support a finding of probable cause and that the *Leon* good-faith exception does not apply. I concur in Part III.

## I. THE AFFIDAVIT IS INSUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE

I disagree that the "relatively thin justification for probable cause" in the affidavit "contains enough" to support a finding of probable cause, Majority Op. at 8, because I believe that the affidavit does not contain a "totality" of facts to provide a reasonable basis for the belief that evidence of a marijuana grow operation, or any continuing marijuana sales, would be found at the Taz Hyde property. Even assuming that the affidavit contains enough information to support the confidential informant's veracity and reliability for providing drug-related information—a point on which the majority and I disagree—the majority opinion dodges the difficult question of how the issuing magistrate could independently determine that the confidential informant is tied to the marijuana community to be able to make a reliable statement regarding Thomas's reputation or that the information the confidential informant provided constituted specific evidence of a grow operation rather than just vague, isolated sales.

Although significant corroboration could bolster the confidential informant's tip, I cannot agree that "the police corroborated significant parts of the informant's story," Majority Op. at 8, especially given the rather simple nature of the tip—the direct observation of three discrete sales outside the home, without more (including timing, frequency, quantity, or type), and the bald assertion that Thomas had a reputation as a grower. The affidavit gives no indication of how the confidential informant came to know of Thomas as a grower rather than just a seller—Agent Hardcastle's knowledge of the confidential informant's connections in the Nashville marijuana community was

not provided in the affidavit.[1]    Aside from the vague electrical-usage records, the majority opinion relies on very weak corroboration—the mere fact that Thomas lived at the address the informant provided does not indicate that any sales had occurred there or that any other activities had happened there that bolstered the tip. *See United States v. Higgins*, 557 F.3d 381, 390 (6th Cir.) ("[N]or did the police corroborate any of the informant's statements beyond the innocent fact that Higgins lived at the stated location and the irrelevant (to the determination of whether Higgins's house contained evidence of a present-day crime) fact that Higgins had a criminal record."), *cert. denied*, 130 S. Ct. 817 (2009).   Thus, the only remaining piece of corroboration for the tip is the electrical-usage records, which this court has held cannot form the sole basis of probable cause. *See United States v. Zimmer*, 14 F.3d 286, 287-89 (6th Cir. 1994) (holding that "the thermal imager, the electric bills, the unrelated officer's visit [to the house at which time he smelled marijuana], etc. were enough to establish probable cause" even without the questionable confidential informant's statements); *United States v. Thomas*, Nos. 92-6207, 92-6208, 1993 WL 337553, at *5 (6th Cir. Aug. 31, 1993) (unpublished opinion) (looking to the "unusual" pattern of high and steady electrical usage with little seasonal variation, the highly specific and largely corroborated informant tips that a grow operation was present, and "evidence of activity consistent with a marijuana growing operation, including the purchase of the growing supplies and the ventilator rotating in calm air"), *cert. denied*, 511 U.S. 1004 (1994).   The confidential informant's simple tip here combined with only the electrical-usage records does not compare with what this court has previously required, and I disagree with the majority's assertion that reliance

---

[1]Although I join the majority opinion's statement of the facts, I think that the majority provides a misleading summary of Agent Hardcastle's suppression hearing testimony.   Agent Hardcastle's testimony does indicate that he believed that "the confidential informant maintained his connections with the marijuana community," Majority Op. at 5, but the confidential informant had been arrested eight months prior to the time that this affidavit was written, and Agent Hardcastle further testified that "when the C[I] was arrested, apparently the word got out and he was extricated from the marijuana cultivation community," R.31 at 44.   Agent Hardcastle testified that the confidential informant was "fully steeped" in the marijuana community "at the time" the informant observed the sales eight months prior to the affidavit's date, but that the information related to a grow operation "was [the informant's] opinion and he had learned [that] from a second party on the property." *Id.* at 45.   Agent Hardcastle testified that he believed the information was still reliable because the informant "was still friends with these other marijuana producers.   They wouldn't deal with him as far as the capacity of selling, dealing, trading, but he would still talk to them. . . .   I had him seek out these people and find out about Mr. Thomas." *Id.* at 46.

on the electrical-usage records as the "[m]ore important[]" piece of corroboration, Majority Op. at 9, compensates for what is otherwise weak evidence tying a marijuana grow operation to Thomas's residence.

Indeed, without more to tie Thomas's residence to a marijuana grow operation, the staleness analysis is flawed—although the majority opinion notes that evidence of a grow operation is not subject to becoming stale based on the nature of the crime, Majority Op. at 10–11, it does not wrestle with the problem that the confidential informant did not actually provide information about a grow other than the reputation statement.  The staleness analysis is based entirely on the electrical-usage records, but the sole information that the electrical-usage records could "refresh" would be the reputation statement, which was the singular statement that could actually tie Thomas to a growing operation rather than merely a sale.  Of the two electrical-usage cases on which the majority opinion relies for its staleness analysis, neither *Zimmer* nor *Thomas* rely on electrical usage to refresh otherwise stale information rather than merely to corroborate.  Even assuming the electrical-usage records refreshed the reputation statement, under the staleness cases on which the majority opinion relies the reputation statement here is not sufficient to support probable cause.  *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) ("When the evidence sought is of an ongoing criminal business of a necessarily long-term nature, such as marijuana growing, rather than that of a completed act, greater lapses of time are permitted *if the evidence in the affidavit shows the probable existence of the activity at an earlier time*." (emphasis added)).  In *Greany*, a named informant provided information, included in the affidavit, that he personally had been involved in setting up a grow operation at the defendant's home one and one-half to two years earlier, and the informant had just been found to have grow equipment in his own home that had not been used for three years.  *Id.* at 524-25.  In *Thomas*, an unpublished opinion, this court relied on a similarly highly specific, largely corroborated tip about a marijuana grow operation.  *Thomas*, 1993 WL 337553, at *5. I cannot agree that five months of electrical-usage records can sufficiently refresh and corroborate a vague, eight-month-old tip.

Therefore, I conclude that the evidence presented in the affidavit when viewed together and in its totality is insufficient to support a reasonable belief that probable cause existed and that the affidavit is invalid on its face because the readily apparent holes in the information provided cannot provide a totality of facts that support probable cause.[2] *See United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2003) (holding that informant's five-month-old tip that "dope" was actually present on defendant's property was not stale because "the crime of drug trafficking is ongoing, the defendant's location is established, the drugs were likely to be there for an indefinite period of time, and the place to be searched constituted a secure operational base," but that the informant's tip "was vague, not obviously reliable, and entirely unsupported by any independent investigation on the part of the police," making it insufficient to establish probable cause on its own); *United States v. Miller*, 314 F.3d 265, 271 (6th Cir. 2002) (Moore, J., concurring) (noting that affidavit with named informant who personally observed marijuana grow operation within twenty-four hours of warrant issuance and who drove by residence with officer after providing tip presented under precedent "a close case" where police corroborated only wholly innocent facts), *cert. denied*, 539 U.S.

---

[2] I follow this court's requirement that we conduct our review based on a totality of the circumstances, guided by our precedents. Because of the deficiencies in the whole of the affidavit, I conclude that a review of the totality of the circumstances does not provide "a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). The confidential informant's tip is neither specific nor two-pronged, as the majority opinion attempts to show. Majority Op. at 8. The "reputation . . . as being a successful producer of just not leaf marijuana, but the more sought after 'bud' of the plant" is the only "provided information regarding illegal indoor marijuana grow operation." R.18, Ex. 1. Labeling the reputation statement as "specific" does not address the point made above that the affidavit does not contain sufficient corroboration of this simple tip to provide probable cause based on the tip, even accepting that the confidential informant here was sufficiently reliable. *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc), did not remove this court's requirement to review, as part of the totality of the circumstances, whether the confidential informant's tip itself contains sufficient information to negate the need for independent corroboration. *See id.* at 976 ("We hold that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, *states that he has seen a particular crime and particular evidence, in the recent past*, a neutral and detached magistrate *may* believe that evidence of a crime will be found." (first emphasis added)). Contrary to the simplified inquiry the majority outlines, Majority Op. at 7–8, we cannot omit a review of whether the tip on its own is sufficient based on its content. Just a reliable informant is not enough if the content of the tip provided does not support a finding of probable cause. *See United States v. McCraven*, 401 F.3d 693, 697–98 (6th Cir.) (concluding that sufficiency of specific tip that a reliable confidential informant had been inside the defendant's house "within the past five days" and personally "observed the [defendant] storing and selling cocaine and marijuana inside the residence" presented "a close question" that the court "need not resolve" based on *Leon*), *cert. denied*, 546 U.S. 1010 (2005); *Hammond*, 351 F.3d at 771–72 (finding three-fold error in a vague tip, from a "not obviously reliable" informant, that was "entirely unsupported by any independent investigation"). Nowhere in *Hammond* did we state that the confidential informant's vague, unsupported tip could have been sufficient if only the confidential informant had been more reliable.

908 (2003); *United States v. Ferguson*, 252 F. App'x 714, 720-21 & n.4 (6th Cir. 2007) (unpublished opinion) (upholding, under precedent, probable cause determination with general informant tip corroborated by innocent facts based in part on "significant level of prior and accurate assistance in the past").

## II.  THE *LEON* GOOD-FAITH EXCEPTION DOES NOT APPLY

I write separately in dissent from Part II of the majority opinion because I believe that either the third or fourth *Leon* circumstance may negate the good-faith exception. Based on my conclusion that the affidavit was insufficient to support probable cause on its face, I cannot agree with the majority's statement that "we also cannot say that a reasonable officer could not have presumed the affidavit and warrant to be valid." Majority Op. at 13.  I acknowledge that "'it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance,'" because it is more difficult to show that an affidavit presented a "substantial basis" for finding probable cause rather than to establish that an officer's reliance on the affidavit was "objectively reasonable."  *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)).

But even viewed in light of "all of the circumstances," the fatal flaws in the affidavit—the vague, insufficiently refreshed, and largely uncorroborated reputation and sales statements coupled only with mildly inculpatory electrical-usage records—lead me to conclude that, looking at the whole of the affidavit and the totality of the evidence presented, "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984); *see United States v. Weaver*, 99 F.3d 1372, 1380-81 (6th Cir. 1996) (listing reasons why officer could not rely on warrant affidavit related to alleged marijuana grow without any meaningful corroboration efforts, including that "[w]ith little firsthand information and no personal observations, [the officer] should have realized that he needed to do more independent investigative work to show a fair probability that this suspect was either possessing, distributing, or growing marijuana").  Only by engaging in very heavy inferences can the majority opinion support its conclusion that "the

affidavit contains enough" to provide probable cause, Majority Op. at 8,—a conclusion I cannot join, and one that I think cautions mightily against finding that the good-faith exception applies to this affidavit. *See Hython*, 443 F.3d at 489 ("The probable cause inquiry necessarily involves inferences—between a confidential informant's past and future reliability, between an observed pattern of behavior and a suspected crime, or between the nature of a crime and the location of its evidence, for example. . . . But in each case, the inference is drawn between facts that are contained in the affidavit or warrant application, and *not* on assumptions about standard police practices or unasserted but hypothetically possible facts."). The affidavit in this case did not present sufficiently compelling facts to infer the nexus between Thomas's residence and the evidence of a grow operation that the officers sought to seize. *See Higgins*, 557 F.3d at 391; *United States v. Williams*, 544 F.3d 683, 686-88 & n.1 (6th Cir. 2008) (holding inference of nexus between evidence sought and suspected criminal's residence was available under "the particular facts" in affidavit demonstrating defendant's "continuing and related" criminal activity); *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 482 (6th Cir. 2006) ("In this circuit, the failure to establish an adequate nexus between the residence and any criminal activity within the four corners of the affidavit is not necessarily fatal, *provided that the information is actually presented to the magistrate through sworn oral testimony*." (emphasis added)); *United States v. Newton*, 389 F.3d 631, 641-42 (6th Cir. 2004) (Moore, J., concurring in part) (detailing prior cases that each "included some additional 'plus' that helped form a nexus between the place to be searched and the evidence sought"), *vacated in part on other grounds*, 546 U.S. 803 (2005); *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc) ("We have previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause," because "these facts [of physical proximity between the drugs and the residence] . . . were not so vague as to be conclusory or meaningless.").

I also disagree with the majority's reliance on "the district court's explanation that the officers 'presented a neutral judicial officer with an affidavit stating that he was aware of information indicating the presence of a marijuana growing operation at a specific location based on the report of a reliable informant that was corroborated by electric usage records and *other details* about the Defendant.'" Majority Op. at 13 (quoting R.35 at 20 (Dist. Ct. Op.)) (emphasis added). Reading the district court's statement in the context of the entire opinion, I can only speculate as to what "other details" the court meant to reference—the three prior sales that the confidential informant had witnessed from some unknown vantage point on Thomas's property, *see* R. 35 at 17, or the reputation statement. It defies logic to conclude that the sole information the confidential informant provided that directly implicated Thomas as a grower (the "report" in the form of the reputation statement, *see* R. 18, Ex. 1 at ¶¶ 1-2) could corroborate itself, and, as I stated above, the sales could not corroborate the alleged presence of a grow operation.

For these reasons, I conclude that the totality of the evidence presented in the warrant affidavit here was so lacking in indicia of probable cause to make the officers' reliance objectively unreasonable. The search cannot be justified on the basis of *Leon*.

## III. CONCLUSION

For these reasons, I respectfully dissent from Parts I and II of the majority opinion, and I would REVERSE the district court's denial of Thomas's motion to suppress and REMAND for further proceedings consistent with my opinion. Notwithstanding that belief, I concur in Part III.