NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1036n.06

No. 11-1021

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Sep 27, 2012***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| WAYNE WILSON, JR., | ) | OPINION |
| | ) | |
| Defendant - Appellant. | ) | |

Before:  SUHRHEINRICH, STRANCH, and DONALD, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge.  Wayne Wilson, Jr. appeals his conviction on drug charges.  He contends that a police officer's testimony during trial differed materially from the officer's affidavit that was used to support a search warrant.  Wilson argues that:  (1) the district court abused its discretion in denying his motion for a mistrial; (2) the court abused its discretion by failing to hold a hearing during trial to allow him to challenge the search warrant affidavit under *Franks v. Delaware,* 438 U.S. 154 (1978); and (3) the court erred when it failed to address his argument that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to inform him before trial of the officer's changed testimony.  Having considered these issues carefully, we AFFIRM.

## I.  FACTS AND PROCEDURAL HISTORY

The trial evidence revealed that, on October 20, 2009, law enforcement officers, including Flint Police Officer Karl Petrich, investigated citizen complaints of drug activity at 702 Thomson Street, Apartments 3 and 5 in Flint, Michigan.  Although the officers believed that Wilson resided in Apartment 3, he was not found there.  The police then moved to Apartment 5, where the tenant, Rashouna Chandler, consented to a search.  Wilson had moved into Chandler's apartment approximately two to three months earlier.  Officers seized cocaine, marijuana, Vicodin pills, currency, a digital scale with cocaine residue on it, a loaded .25 caliber Raven semi-automatic handgun with an obliterated serial number, ammunition, and a loaded 12-gauge shotgun.  The shotgun was found in a blanket box, referred to as a "chester box."

On November 19, Officer Petrich sent a confidential informant to 613 Thomson, Apartment 2, to purchase crack cocaine.  After the controlled purchase, Petrich sought a search warrant for that apartment.  On November 20, a state prosecutor prepared the search warrant and affidavit based on information provided by Petrich, who signed the affidavit under oath before a state district judge.

The affidavit and search warrant described "the premises" to be searched as 613 Thomson Street, Apartment 2.  Petrich stated in the affidavit that he wanted to keep the confidential informant anonymous and that he believed the informant was reliable and credible.  The informant told Petrich that quantities of cocaine were being sold from the premises.  Petrich further averred that the informant "went into the above described residence and remained there for a brief period of time" and while the informant was on the premises, a subject left the residence and provided a quantity of suspected cocaine to the informant in exchange for a quantity of prerecorded currency.  Petrich

further averred that the confidential informant "was kept under continuous surveillance by your affiant and fellow officers during the sequence of events . . . except for that limited period of time while [the informant] was inside the above described premises." Petrich also stated: "During the controlled purchase, [the informant] was under constant surveillance by members of the Special Operations Bureau, who observed a hand to hand transaction" between the informant and the suspect.

Based on this affidavit, the state district judge issued a search warrant for 613 Thomson Apartment 2, and police officers executed the search warrant the same day. After an officer knocked on the door, the police could hear "rumbling" in the apartment, but they received no response to the knock. Fearing the destruction of evidence, the police forced the door open. The officers moved to the back of the apartment where Wilson was "already laid out flat on the ground" on the floor a foot from the bathroom. Officer Petrich recognized Wilson as the person who had provided cocaine to the confidential informant the day before. Although the toilet had been flushed, police officers recovered $15 in wet currency; a small rock of crack cocaine; a digital scale with white residue on it; a Holy Koran and a State of Michigan bridge card with Wilson's name on them; and an additional $1,409 in currency. The officers found a key to the apartment in a pocket of the pants Wilson was wearing. The police also found the same "chester box" that held the shotgun the police seized during their previous consent search of 702 Thomson Apartment 5.

Following the search at 613 Thomson Apartment 2, Officer Petrich completed a report for his supervisors. With regard to the controlled drug purchase on the preceding day, Petrich stated that the confidential informant knocked on the door of the apartment, a black male left the residence and

met with the informant, and a hand-to-hand exchange took place. The black male then returned to the apartment.

The federal grand jury returned a five-count superseding indictment against Wilson. In counts one and two, Wilson was charged with possession with intent to distribute crack cocaine and felon-in-possession of a firearm related to the consent search conducted at 702 Thomson Street Apartment 5. In count three he was charged with distributing crack cocaine and in count four with possession with intent to distribute crack cocaine from 613 Thomson Street Apartment 2. In count five, he was charged with possession with intent to distribute crack cocaine on January 6, 2010, near East Village Inn in Flint. During discovery, the government turned over to the defense the search warrant and affidavit for 613 Thomson Street Apartment 2, as well as Officer Petrich's report about the execution of that search warrant.

During trial, Officer Petrich testified inconsistently with his search warrant affidavit and report. On direct examination he stated that the confidential informant knocked on the door at 613 Thomson Apartment 2 and the door was answered after a short period of time. Petrich then observed the informant walk to the front yard. Shortly after that, the person Petrich later identified as Wilson emerged from the apartment door. Wilson and the informant walked down the street approximately 300 feet to 702 Thomson where they stepped just inside the breezeway and conducted a hand-to-hand drug transaction. Wilson and the informant then walked back down the street together. Wilson returned to his apartment, and the confidential informant met up with Officer Petrich. After this testimony, Officer Petrich explained how he procured and executed the search warrant for 613

Thomson Apartment 2. All of the evidence seized from that apartment was admitted into evidence. Defense counsel did not object to this testimony or to the admission of the exhibits.

On cross-examination, defense counsel probed how Officer Petrich could have observed Wilson and the informant walk 300 feet from 613 to 702 Thomson. Petrich explained that he first positioned himself 150 feet away, directly behind 613 on the opposite block, so that he could look through the back yard to the side door of 613, where the informant knocked. He described 702 Thomson as almost ten houses away from 613 on the opposite side of the street. When Wilson came out of the apartment at 613 and started walking with the informant, Officer Petrich followed them up the street in his car. When the two men stopped at 702, Officer Petrich drove past 702, pulled into a driveway on the opposite side of the street, and sat there. As he drove by 702 at ten to fifteen miles per hour, he saw the hand-to-hand transaction take place in the breezeway. By the time Petrich pulled into a driveway, the two men were already leaving the breezeway of 702, so they had no time to enter that residence and come back out. He estimated Wilson and the informant stood in the breezeway for fifteen seconds. Officer Petrich watched the two men walk back to 613 Thomson, and then he rejoined the confidential informant.

Defense counsel cross-examined Petrich about the differences between his trial testimony and his search warrant affidavit and post-search report, although counsel focused more heavily on the report than the affidavit. Petrich admitted that he swore to the truth of the affidavit. He also admitted his report did not reveal that Wilson and the informant walked to 702 Thomson or that the hand-to-hand transaction took place at 702. He denied that his report indicated the hand-to-hand transaction took place in front of 613 Thomson. Officer Petrich conceded, however, that the only

premises described in the affidavit was 613 Thomson and that the affidavit stated the informant went inside 613, but that was not true.

On redirect examination, the prosecutor asked Officer Petrich only about his report. Petrich testified that he deliberately excluded information about the walk from 613 to 702 Thomson to obscure the identity of the confidential informant and protect the informant from retaliation. On re-cross examination, Petrich denied that he deliberately falsified his report to his supervisors, but he agreed that he deliberately withheld information. When defense counsel asked about the search warrant affidavit, the district court sustained the prosecutor's objection that the question was beyond the scope of cross.

The same day Officer Petrich testified, defense counsel filed a "Motion For Involuntary Mistrial" asking the court to inquire whether the prosecutor knew prior to trial that Officer Petrich's testimony would be inconsistent with the documents provided to the defense during discovery. If the prosecutor did know, defense counsel argued, the prosecutor had a duty to disclose the changed testimony so that defense counsel could challenge the search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978), and *Brady v. Maryland*, 373 U.S. 83 (1963). Defense counsel also argued that, if the government decided not to prosecute Officer Petrich for making false statements, that decision should have been disclosed to the defense as impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972). Counsel also challenged the prosecutor's gratuitous injection into the trial of Wilson's alleged dangerousness, a subject that could only have prejudiced him before the jury. Defense counsel asked the court to sanction the government by declaring a mistrial and dismissing the charges.

During brief oral argument on the motion, the prosecutor explained that he learned of Officer Petrich's changed testimony during trial, and asked for time to provide a written response to the motion. The court took the motion under advisement and finished the trial. After the jury returned a verdict convicting Wilson, the government filed a written response to the motion for a mistrial, reiterating that the prosecutor first learned of Officer Petrich's changed testimony on the first day of trial, after the jury had been sworn and excused for the day. The government argued that a mistrial was not warranted.

In a written Opinion and Order, the district court denied the motion. The court ruled that, on redirect examination, the prosecutor simply allowed Officer Petrich to explain that he left information out of his report to protect the informant's identity. Further, the prosecutor did not elicit any testimony about Wilson's alleged dangerousness. The court also found that the prosecutor's actions did not amount to justification for lying, nor was the government's conduct inconsistent with due process obligations because the police report was not made under oath, and the prosecutor did not ask about the search warrant affidavit. Finding that the government did not know about Officer Petrich's changed testimony until trial, the court declined to address Wilson's arguments that were predicated on the assumption that the government did have knowledge before trial. Finally, the court ruled that Wilson was not deprived of fairness because the government provided the officer's report and affidavit to the defense before trial and defense counsel was able to use the documents to cross-examine Petrich extensively.

## II.  ANALYSIS

Wilson divides his brief into three separate arguments, but because the issues are so intertwined, we will consider the three issues together.  Wilson contends that the district court should have granted his motion for a mistrial because the government withheld material evidence in violation of *Brady v. Maryland* and Federal Rule of Criminal Procedure 16(c), thereby surprising him at trial.  Because of the late disclosure of the change in Officer Petrich's testimony, Wilson argues that he was precluded from filing, pursuant to *Franks v. Delaware*, a pretrial motion to suppress the evidence obtained pursuant to the search warrant for 613 Thomson Apartment 2.  Had a motion to suppress been filed, Wilson contends, the court might have suppressed the evidence relating to the search, resulting in the dismissal of counts 3 and 4 of the indictment.

### A.  Standard of review

We review the denial of a motion for a mistrial for an abuse of discretion.  *United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006).  We first determine whether the challenged testimony was improper, and if so, whether it "was so clearly improper and prejudicial to the defendant[] that the harm could not be erased by any instruction which the court might give."  *United States v. Howard*, 621 F.3d 433, 458–59 (6th Cir. 2010) (quoting *United States v. Smith*, 601 F.3d 530, 538 (6th Cir. 2010)), *cert. denied*, 131 S. Ct. 1623 (2011).  In making this determination, we consider five factors: "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable; (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the

evidence against the defendant." *Id.* at 459 (quoting *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir.

2003)).

## B.  Analysis of the three issues

Rule 16(c) provides:

**Continuing Duty To Disclose.**  A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:

(1)  the evidence or material is subject to discovery or inspection under this rule; and

(2) the other party previously requested, or the court ordered, its production.

Because the government learned during trial that Officer Petrich's testimony would not be

consistent with the search warrant affidavit he signed under oath or with his report, the government

violated Rule 16(c) by failing to disclose this development to the defense immediately. *See United

States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009).  Two of the *Zuern* factors favor Wilson's

motion for a mistrial because the government solicited Officer Petrich's trial testimony and the

government's line of questioning was not reasonable where the defense was not given previous

notification of the changed testimony.  The remaining three factors, however, favor the government.

Wilson did not contemporaneously object or seek other relief, he did not prove that the government

acted in bad faith, and the details concerning Wilson's walk with the informant was only a small part

of the trial evidence presented against Wilson.

Defense counsel did not ask to approach the bench when the changed testimony first came

to light.  Had counsel objected and asked for a sidebar, the district court might have granted Wilson

a continuance to prepare to meet the changed testimony, or the court might have interrupted the trial

to allow Wilson an opportunity to make a motion to suppress and challenge the search warrant and affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). *See* Fed. R. Crim. P. 16(d). If the district court had found a violation under Rule 16(c), *Brady*, or *Giglio*, the court might have excluded the evidence seized from 613 Thomson Apartment 2 as a sanction for the violation. But defense counsel did not object, ask for a continuance or sanctions, or request a *Franks* hearing.

Even if defense counsel had asked for a *Franks* hearing during trial, however, Wilson would not have prevailed. To obtain a *Franks* hearing, the defendant must make a substantial preliminary showing that the police officer included—knowingly and intentionally, or with reckless disregard for the truth—in the warrant affidavit a false statement that was necessary to the finding of probable cause. *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1772 (2012). A *Franks* hearing is warranted only "[i]f, when the alleged false statement is put aside, the affidavit no longer provided the court with probable cause." *Id.* at 504–05. We have "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing cases). When material omissions are at issue, "the defendant is entitled to a hearing if and only if: (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *Id.* Therefore, the law requires both redaction of false statements from the affidavit and consideration of material omitted from the affidavit in order to determine whether there was probable cause for a search warrant.

Although a *Franks* hearing was not held, direct examination and thorough cross-examination provided a record of the false statements included in and the true statements omitted from the affidavit. Officer Petrich admitted that his affidavit contained false statements that the confidential informant went inside 613 Thomson Apartment 2 during the controlled purchase and that the controlled purchase occurred on the premises. Petrich also conceded that the affidavit omitted the information that Wilson and the informant walked from 613 to 702 Thomson to complete the drug transaction. He denied, however, that he intended to mislead and states that he omitted the detail to protect the identity of the informant.

If we redact the admittedly false statements from the affidavit, *see Poulsen*, 655 F.3d at 504, and consider the information omitted from the affidavit, *see Fowler*, 535 F.3d at 415, Wilson was not entitled to a *Franks* hearing because the affidavit provided a sufficient nexus to cocaine trafficking at 613 Thomson Apartment 2 to support probable cause for the search warrant. *See United States v. Moore*, 661 F.3d 309, 312–14 (6th Cir. 2011). The informant knocked on the door of 613 Thomson Apartment 2, Wilson emerged and walked with the informant down the street, and Wilson handed the informant a quantity of crack cocaine in exchange for money, all while under the surveillance of the police. The confidential informant had earlier informed Officer Petrich that quantities of cocaine were being sold from 613 Thomson Apartment 2. Although the affidavit should have explained why Officer Petrich thought the informant was credible and reliable, the controlled purchase corroborated the informant's knowledge about drug trafficking at 613 Thomson and this was enough to show reliability. *See Moore*, 661 F.3d at 313; *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010). The affidavit also included information that the informant was

11

searched by police before and after the purchase, and the informant did not possess any crack cocaine other than the amount purchased from Wilson during the controlled buy at 702 Thomson and promptly turned over to the police. The information about the controlled purchase was not stale because Officer Petrich sought the search warrant the day after the sale. *See id.* at 312–13.

The affidavit was thin. However, judged on the totality of the circumstances, it contained sufficient information to establish a substantial basis upon which the state judge could conclude that probable cause existed to search 613 Thomson Apartment 2. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Thomas*, 605 F.3d at 307–08 (affirming denial of suppression motion where affidavit offered "relatively thin justification for probable cause").

We further conclude that a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), did not occur. The government should have notified the defense as soon as possible that Officer Petrich would testify about Wilson's walk with the informant to 702 Thomson. Although the government could have been more prompt in making this disclosure, the information was provided during trial. "If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs 'unless the defendant has been prejudiced by the delay in disclosure.'" *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007) (quoting *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986)). Wilson has not shown prejudice resulting from the government's delay. *See United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006). His counsel effectively utilized the late-disclosed evidence to impeach Officer Petrich during cross-examination by pointing out to the jury the differences between the trial testimony and the search warrant affidavit and report. The district court should have addressed the

*Brady* issue directly. Despite this failure, we conclude that reversal is not necessary. Wilson did not timely request a continuance when the district court could have addressed the issue.

### III.  CONCLUSION

For all of the reasons stated, we conclude that the district court did not abuse its discretion in denying Wilson's motion for a mistrial and in not *sua sponte* ordering a *Franks* hearing during trial. Accordingly, we AFFIRM.

BERNICE B. DONALD, concurring. I agree with the majority opinion that the district court did not abuse its discretion in denying Wilson's motion for a mistrial. I write separately because I disagree with the conclusion that Wilson could not show a *Franks* or *Brady* violation.

The relevant *Franks* inquiry, for purposes of this case, is whether Officer Petrich's affidavit would support a finding of probable cause to search 613 Thomson *if the false statements were not considered*. *See United States v. Poulsen,* 655 F.3d 492, 504 (6th Cir. 2011) ("[i]f, when the alleged false statement is put aside, the affidavit no longer provides the court with probable cause then a Franks hearing is warranted."). The false statements in Petrich's affidavit were that the confidential informant went into 613 Thomson, that a transaction between the informant and Wilson occurred on the premises of 613 Thomson, and that the informant was kept under surveillance during the events described in the affidavit except for the time he was inside 613 Thomson.[1] After excising the false statements, however, the only relevant information remaining in the affidavit is (1) that the confidential informant told Petrich that cocaine was being sold from 613 Thomson; (2) that Petrich thinks the confidential informant is reliable and credible; (3) that the confidential informant was found with cocaine after meeting with Wilson; and (4) that officers observed a hand-to-hand transaction between Wilson and the confidential informant. This information does not show a substantial nexus between 613 Thomson and suspected evidence of drug trafficking because the false

---

[1]The operative paragraph of Petrich's affidavit reads: "That XX thereafter went into the above described residence and remained there for a brief period of time. While XX was on the premises, they were approached by a subject that exited said residence herein after [sic] referred to as S1, and received a quantity of suspected **cocaine** form S1 in exchange for a quantity of prerecorded currency while on the premises."

14

statements were the only link to any activity occurring at 613 Thomson. Thus, I believe that Wilson would likely have succeeded in a *Franks* challenge had he asserted one.

The opinion asserts, however, that our inquiry should not end with redacting false statements from the affidavit and concluding that the affidavit without these statements did not provide the court with probable cause to issue the relevant warrant. The majority cites *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) for the proposition that, in addition to *redaction* of false statements *from* the affidavit, material facts omitted from the affidavit must be *read into* the affidavit in order to determine whether there was probable cause for a search warrant.

I believe this is a misreading and misapplication of the holding in *Fowler. Fowler* involved allegations that "ATF agents intentionally misled the magistrate by omitting from the affidavit any acknowledgment of the fact the confidential informant was involved in ongoing criminal activity." 535 F.3d at 415. The defendant thus attacked the veracity of the affidavit on the basis of what it left out rather than false statements made.

Wilson has no analogous claim of omission here. The defect of the affidavit is that it stated that the controlled drug buy had occurred at the property to be searched when in fact it had occurred elsewhere. As this court stated in a case cited to in *Fowler*, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." The majority's position that information omitted from an affidavit must be read into the affidavit in evaluating its adequacy is without support in the case law. Because the Wilson affidavit, without its false statements, provided the magistrate with inadequate factual support for a finding of probable cause, a *Franks* challenge would have been appropriate.

Likewise, Wilson had a plausible argument under *Brady*. The majority opinion concludes that the late disclosure of Petrich's false statements did not prejudice Wilson. I disagree. The government never "disclosed" this information to Wilson's counsel. Instead, it placed Petrich on the stand knowing that his testimony would materially differ from his previous statements describing the controlled purchase. It is a different case if the government tells the defendant's counsel the day of the testimony that the witness's original statements were incorrect as that scenario at least gives defense counsel some forewarning and ability to prepare. When the false statements are disclosed during the course of a witness's testimony, the prejudice to the defendant is much greater.

The majority opinion also concludes that during cross-examination Wilson's counsel was able to effectively impeach Petrich by highlighting the incorrect statements he made in the affidavit and report. But the fundamental problem with Petrich's misstatements is not that they affect his credibility as a witness but, instead, that they impact the initial determination of probable cause to search 613 Thomson. No amount of cross-examination could remedy this latter effect. The undisclosed information was materially related to the *Franks* issue discussed above. It denied Wilson the opportunity to challenge that information with a *Franks*-based motion to suppress prior to Petrich's testimony. It is plausible, then, that a *Brady* violation occurred; had the information been disclosed to the defense, the result of the proceeding may have been different.

While I disagree with the majority opinion's determination that Wilson could not succeed on a *Franks* or *Brady* challenge, I agree that the district court did not abuse its discretion in denying Wilson's motion for a mistrial. After Petrich's testimony, Wilson's counsel (1) did not object to Petrich's testimony or the introduction of the evidence seized from 613 Thomson; (2) did not seek

16

a continuance or sanctions; and (3) did not request a *Franks* hearing. While Wilson's counsel did file a motion for involuntary mistrial addressing the Government's knowledge of the false statements, the motion unnecessarily cabined the inquiry by asking whether the Government knew of the false statements prior to trial rather than prior to Petrich's testimony. Moreover, even though the motion cites *Franks* and *Brady*, it only asked for a mistrial and dismissal of the charges; it did not seek a *Franks* or *Brady* hearing or the opportunity to file a motion to suppress.

We review the district court's determination under the abuse of discretion standard. Considering the manner by which Wilson's counsel attempted to preserve or remedy the error of Petrich's misstatement, I concur that the district court did not abuse its discretion in denying the motion for a mistrial.